# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

———————————————

TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD., CANADIAN SOLAR INTERNATIONAL LIMITED, CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD.,

Plaintiffs-Appellants,

NEXTERA ENERGY CONSTRUCTORS, LLC,

Plaintiff,

v.

UNITED STATES,

Defendant-Appellee,

AUXIN SOLAR INC.

Defendant.

———————————————

On Appeal from the Court of International Trade in case nos. 23-227, 23-222, Judge M. Miller Baker.

———————————————

## DEFENDANT-APPELLEE'S BRIEF

———————————————

BRETT A. SHUMATE
*Assistant Attorney General*

PATRICIA M. McCARTHY
*Director*

CLAUDIA BURKE
COLLIN T. MATHIAS
*Attorneys, Commercial Litigation Branch*
*Civil Division, U.S. Department of Justice*
*Signature block continued on next page*

*P.O. Box 480, Ben Franklin Station*
*Washington, DC 20044*
*(202) 307-0315*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION ..................................................2

STATEMENT OF THE ISSUE............................................................2

STATEMENT OF THE CASE................................................................2

I.    Statutory Background....................................................................2

II.   Factual Background ......................................................................6

III.  Prior Proceedings....................................................................... 14

SUMMARY OF ARGUMENT............................................................ 15

ARGUMENT ...................................................................................... 17

I.    Standard of Review....................................................................... 17

II.   Commerce Reasonably Weighed the Section 1677j(b)(2) Factors to Find that the Process of Assembly or Completion in Thailand Was Minor or Insignificant .................................................................................. 17

      A.    *Loper* Does Not Apply....................................................18

      B.    Commerce Has No Practice of Requiring a Majority or Specific Combination of the Section 1677j(b)(2) Factors ........................................21

      C.    Commerce's Emphasis of the R&D Factor Is Supported by Substantial Evidence........................................24

            1.    Commerce Supported the Particular Emphasis on R&D ............25

            2.    Commerce Reasonably Considered Affiliation in its Analysis, and, Regardless, Any Alleged Error Was Harmless .......30

D.      Commerce's Weighing of the Value of Processing in Thailand Is a Rational Methodology Supported by Substantial Evidence......................33

E.      Appellants' Remaining Arguments Are Unavailing....................................40

CONCLUSION ................................................................................................................. 42

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al Ghurair Iron & Steel LLC v. United States (Al Ghurair I),*
536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021).............................................................. 33, 36

*Al Ghurair Iron & Steel LLC v. United States (Al Ghurair II),*
65 F.4th 1351 (Fed. Cir. 2023).......................................................................passim

*Auxin Solar, Inc. v. United States,*
798 F. Supp. 3d 1331 (Ct. Int'l Trade 2025)....................................................................6

*Bell Supply Co., LLC v. United States,*
888 F.3d 1222 (Fed. Cir. 2018).................................................................... 40, 42

*Canadian Solar, Inc. v. United States,*
918 F.3d 909 (Fed. Cir. 2019) ...................................................................................3

*Droplets, Inc. v. E\*TRADE Bank,*
887 F.3d 1309 (Fed. Cir. 2018)..................................................................................31

*Government of Quebec v. United States,*
105 F.4th 1359 (Fed. Cir. 2024) .............................................................. 24, 32

*Guangdong Wireking Housewares & Hardware Co. v. United States,*
745 F.3d 1194 (Fed. Cir. 2014) ..................................................................................2

*Hanon Systems Alabama Corp. v. United States,*
794 F. Supp. 3d 1348 (Ct. Int'l Trade 2025)............................................. 19, 20, 22, 36

*Hyundai Elec. & Energy Sys. Co. v. United States,*
15 F.4th 1078 (Fed. Cir. 2021)..................................................................................37

*In re Morsa,*
713 F.3d 104 (Fed. Cir. 2013) ..................................................................................24

*Lignite Energy Council v. United States EPA,*
198 F.3d 930 (D.C. Cir. 1999) ....................................................................... 18, 19

*Loper Bright Enterprises v. Raimondo,*
603 U.S.369 (2024) ...........................................................................19

*Mosaic Co. v. United States,*
160 F.4th 1340 (Fed. Cir. 2025) ...............................................17, 19

*Nielsen v. Preap,*
586 U.S. 392, 139 S. Ct. 954 (2019) ......................................................36

*Royal Thai Gov't v. United States,*
436 F.3d 1330 (Fed. Cir. 2006)...........................................................24

*Save Domestic Oil, Inc. v. United States,*
357 F.3d 1278 (Fed. Cir. 2004) ...........................................................37

*SolarWorld America, Inc. v. United States,*
910 F.3d 1216 (Fed. Cir. 2018) .....................................................24, 29

*Syneren Technologies Corp. v. United States,*
166 F.4th 1040, 1044 (Fed. Cir. 2026)................................................32

*Tyler Constr. Grp. v. United States,*
570 F.3d 1329 (Fed. Cir. 2009) ...........................................................32

*Wheatland Tube Co. v. United States,*
161 F.3d 1365 (Fed. Cir. 1998) ...........................................................41

## Statutes

19 U.S.C. § 1516a(b)(1)(B) ....................................................................17

19 U.S.C. § 1673(1).....................................................................................3

19 U.S.C. § 1677(b) ...............................................................................5, 36

19 U.S.C. § 1677j ...................................................................................3, 42

19 U.S.C. § 1677j(b)(1).......................................................................passim

19 U.S.C. § 1677j(b)(2).......................................................................passim

19 U.S.C. § 1677j(b)(3)..............................................................................5

19 U.S.C. § 3512(d) ...................................................................................5

28 U.S.C. § 1295(a)(5) ..............................................................................2

28 U.S.C. § 1581(c) ...................................................................................2

**Regulations**

19 C.F.R. § 351.225(h) .............................................................................5

19 C.F.R. § 351.226(h) .............................................................................4

**Other Authorities**

*Small*, Merriam-Webster Dictionary, https://www.merriamwebster.
com/dictionary/small (last accessed February 26, 2026) ......................... 34, 35

Uruguay Round Agreements Act, Statement of Administrative Action,
H.R. Rep. No. 103-316 (1994) ...........................................................passim

**STATEMENT OF RELATED CASES**

No other appeal in or from the present civil action has previously been before this or any other appellate court. This Court has already designated as companion cases two other appeals that could indirectly impact this appeal due to similar legal issues in common or procedural history: *BYD (H.K.) Co., Ltd. v. United States*, Fed. Cir. No. 25-1937; *Auxin Solar Inc. v. American Clean Power Assoc.*, Fed. Cir. No. 25-2120.

# INTRODUCTION

The Department of Commerce issues antidumping and countervailing duty orders to address imports that are sold for less than fair value or are unfairly subsidized from specific countries. Often, producers and exporters will try to circumvent those orders by performing further processing in a third country and claiming the third country as the origin of the import, rather than the country subject to the order. Commerce conducts circumvention proceedings to ferret out this type of evasion. A key part of the statutory inquiry is to determine whether the finishing in the third country is "minor or insignificant." Congress instructed Commerce to consider five factors and explicitly stated that the balancing would be case-specific and that no one factor should control.

Here, Commerce conducted a circumvention inquiry on solar cells from China for which exporters and producers claimed Thai origin. Commerce weighed the five factors and determined that because of the unique characteristics of the solar cell industry – namely the extensive research and development costs funded by Chinese companies – the work done in Thailand was minor or insignificant within the meaning of the statute. This combined with further statutory analysis led Commerce to find the Chinese orders were being circumvented by solar cells further processed in Thailand and subsequently exported to the United States. Appellants Trina Solar Science & Technology (Thailand) Ltd. (Trina) and Canadian Solar International Limited and Canadian Solar Manufacturing (Thailand) Co., Ltd. (together, Canadian

Solar) challenged the finding at the Court of International Trade (CIT), which sustained Commerce's finding as supported by substantial evidence.

## STATEMENT OF JURISDICTION

The CIT possessed jurisdiction pursuant to 28 U.S.C. § 1581(c). This Court has exclusive jurisdiction over appeals from final decisions of the CIT under 28 U.S.C. § 1295(a)(5).

## STATEMENT OF THE ISSUE

The issues in this case are:

1. Whether Commerce's finding that the overall production process in Thailand for Canadian Solar and Trina is minor or insignificant is supported by substantial evidence and in accordance with law when Commerce focused primarily on research and development.

2. Whether Commerce's finding that the value of the processing performed in Thailand by Canadian Solar represents a small proportion of the value of the imported solar cells is supported by substantial evidence.

## STATEMENT OF THE CASE

### I.    Statutory Background

"The Tariff Act of 1930, as amended, permits Commerce to impose two types of duties on imports that injure domestic industries . . ." *Guangdong Wireking Housewares & Hardware Co. v. United States*, 745 F.3d 1194, 1196 (Fed. Cir. 2014). First, Commerce may impose antidumping duties on goods sold in the United States at less

than fair value.  19 U.S.C. § 1673(1).  Second, Commerce may impose countervailing duties on goods that receive countervailable subsidies from foreign governments.  *Id.* § 1671(a).  In imposing these duties, Commerce must describe the product "within the scope of the order[]" by reference to its "technical characteristics" and "country of origin."  *Canadian Solar, Inc. v. United States*, 918 F.3d 909, 913 (Fed. Cir. 2019).

Often, when these duties "are imposed, the marketplace reacts to the requirement for the payment of the additional" duties, and "[o]ne such reaction is the circumvention of the duty orders" by efforts "such as by transshipping the goods subject to the duties through another country."  *Al Ghurair Iron & Steel LLC v. United States (Al Ghurair II)*, 65 F.4th 1351, 1355 (Fed. Cir. 2023).  Congress created 19 U.S.C. § 1677j to allow Commerce to investigate and "make determinations that prevent companies from circumventing [antidumping] and [countervailing duty] orders."  *Id.*

To prevent circumvention of antidumping and countervailing duty orders, Commerce may include goods produced in a foreign country within the scope of an order covering a different foreign country if:

> (A) [the] merchandise imported into the United States is of the same class or kind as any merchandise produced in a foreign country that is subject of [an order],
>
> (B) before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise which  . . . is subject to the order . . . or . . . produced in a foreign country . . . to which such order applies,

(C) the process of assembly or completion in a foreign country . . . is minor or insignificant,

(D) the value of the merchandise produced in the foreign country . . . is a significant portion of the total value of the merchandise exported to the United States, and

(E) action is appropriate . . . to prevent evasion of such order.

19 U.S.C. § 1677j(b)(1); *see also* 19 C.F.R. § 351.226(h) (explaining that Commerce "may include within the scope of an antidumping or countervailing duty order, at any time such order is in effect, imported merchandise completed or assembled in a foreign country other than the country to which the order applies"). Commerce finds circumvention after making an affirmative finding with respect to each of the factors. 19 U.S.C. § 1677j(b)(1)(A)-(E). Then, Commerce "may include [circumventing] merchandise within the scope of" the order. 19 U.S.C. § 1677j(b)(1).

In determining whether the process of assembly or completion in the third country is "minor or insignificant" under 19 U.S.C. § 1677j(b)(1)(C), the statute directs Commerce to "take into account"

(A) the level of investment in the foreign country,

(B) the level of research and development in the foreign country,

(C) the nature of the production process in the foreign country,

(D) the extent of the production facilities in the foreign country, and

(E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. § 1677j(b)(2). No single factor controls. 19 C.F.R. § 351.225(h); Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (SAA), at 893 (1994), reprinted in 1994 U.S.C.C.A.N. 4040.[1]

The statute also identifies additional, non-exhaustive, discretionary factors to consider in weighing whether to find circumvention. Commerce thus will "take into account such factors as"

> (A) the pattern of trade, including sourcing patterns,
>
> (B) whether the manufacturer or exporter of the merchandise . . . described in [19 U.S.C. § 1677j(b)(1)(B)] is affiliated with the person who uses the merchandise described in [19 U.S.C. § 1677j(b)(1)(B)] to assemble or to complete in the foreign country the merchandise that is subsequently imported into the United States; and
>
> (C) whether imports into the foreign country of the merchandise described in [19 U.S.C. § 1677(b)(1)(B)] have increased after the initiation of the investigation that resulted in the issuance of such order.

19 U.S.C. § 1677j(b)(3).

Congress "authorize[d] [Commerce] to apply . . . orders in such a way as to prevent circumvention and diversion of U.S. law." Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-71 (S. Rep.), at 101 (1987). Commerce thus possesses "substantial discretion in interpreting these terms, and invoking these measures, so as to allow it flexibility to apply the provisions in an appropriate matter . . . [and to] use [its] authority to the fullest extent possible to

---

[1] The SAA is the "authoritative expression" of the statute's meaning. 19 U.S.C. § 3512(d).

combat diversion and circumvention of the antidumping and countervailing duty laws." *Id.* at 100.

## II. Factual Background

In 2012, Commerce issued antidumping and countervailing duty orders on crystalline silicon photovoltaic cells (solar cells) from China. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 77 Fed. Reg. 73,018 (Dep't of Commerce Dec. 7, 2012); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 77 Fed. Reg. 730,017 (Dep't of Commerce Dec. 7, 2012) (collective *Solar Orders*).

A decade later, Auxin Solar Inc. (Auxin), a domestic producer of solar modules,[2] requested that Commerce initiate a circumvention inquiry to determine whether solar cells and modules from four countries (Cambodia, Malaysia, Thailand, and Vietnam) that use parts and components from China were circumventing the *Solar Orders*. Commerce initiated the requested circumvention inquiry into, as relevant here, Thailand, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,*

---

[2] This Court has designated *Auxin Solar Inc. v. American Clean Power Assoc.*, Fed. Cir. No. 25-2120 as a companion case. That case relates to Commerce's promulgation of a regulation temporarily suspending the collection of duties that otherwise would have been due pursuant to the final circumvention determinations on solar cells from Cambodia, Malaysia, Vietnam, and as relevant here, Thailand. *See Auxin Solar, Inc. v. United States*, 798 F. Supp. 3d 1331, 1335-36 (Ct. Int'l Trade 2025). These cases involve substantially different legal issues, but are related nonetheless because the regulation at issue in that appeal temporarily would have affected the obligations of importers to pay duties from the circumvention determination at issue in this appeal.

*From the People's Republic of China*, 87 Fed. Reg. 19,071 (Dep't of Commerce Apr. 1, 2022) (*Initiation*), and selected appellants Trina and Canadian Solar as mandatory respondents. Appx5356-5364.

Commerce published its preliminary determination, preliminarily finding that Trina and Canadian Solar circumvented the *Solar Orders* and that circumvention of the orders was occurring in Thailand on a country-wide basis. Appx8486-8496, *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 75,221 (Dep't of Commerce May 12, 2022); Appx8459-8484.

Commerce described the general production process for solar modules in four steps. First, raw polysilicon is heated, melted, and cooled to form a polysilicon ingot. Appx8475 (citing *Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled Into Other Products*, Inv. No. TA-201-075, Publication 5021 (Feb. 7, 2020) (*ITC Report*) at I-62). Second, the ingot is sliced, typically using a diamond wire saw, into polysilicon wafers. *Id.* (citing *ITC Report* at I-64). Third, polysilicon wafers undergo several chemical treatments, including the formation of a positive-negative (p/n) junction, which converts the polysilicon wafers into solar cells. Appx8475-76 (citing *ITC Report* at I-65-I-66). Commerce explained that the formation of the p/n junction is the step of the production process at which the solar cell is capable of converting sunlight into electricity and thus defines a cell's country of origin. Appx8477. Fourth, solar cells are soldered into strings and placed onto a layer of

solar glass and ethyl vinyl acetate (EVA) and covered by another layer of EVA and backsheet. The solar cells are then cured and encased in aluminum frames, and a junction box is attached to create a finished solar module. Appx8476 (citing *ITC Report* at I-67).

Commerce preliminarily found that Canadian Solar and Trina performed the third and fourth steps above (the cell and module steps) in Thailand. Appx8472. Commerce also found that solar modules exported by Canadian Solar and Trina from Thailand to the U.S. are of the same class or kind of merchandise as the merchandise subject to the *Solar Orders*, and that they were completed in Thailand using parts and inputs from China. Appx8471-72. Commerce similarly concluded that those parts and inputs are a significant portion of the total value of the completed solar modules exported by Canadian Solar and Trina. Appx8479.

Commerce then determined that the process of assembly or completion of solar cells by Canadian Solar and Trina in Thailand was minor or insignificant within the meaning of 19 U.S.C. § 1677j(b)(1)(C). Appx8473. Commerce evaluated the five factors identified in 19 U.S.C. § 1677j(b)(2) with respect to production in Thailand: (A) the level of investment; (B) the level of research and development (R&D); (C) the nature of the production process; (D) the extent of the production process; and (E) the value added as a proportion of the total value of the respondents' U.S. exports of solar cells and modules. Appx8474-78.

First, Commerce found that the level of investment by both Canadian Solar and Trina in Thailand was not minor or insignificant when compared to the level of investment of their affiliates in China. Appx8474. This first factor, thus, did not favor minor or insignificant processing. *Id.* Second, Commerce found that the level of R&D carried out by Trina and Canadian Solar in Thailand was minor or insignificant when compared to the R&D carried out by their respective Chinese parent companies. Appx8474. Commerce also found that, in Thailand, Trina did not incur any R&D-related expenses from 2019-2021. Appx8475. Thus, Commerce found that the R&D factor weighed in favor of finding minor or insignificant processing. *Id.* Third, Commerce found that the nature of the production process for solar cells and solar modules, which both respondents carried out in Thailand, was not minor or insignificant when compared to the production process for polysilicon ingots and solar wafers. Appx8476-8478. Thus, Commerce found that the third factor did not weigh in favor of minor or insignificant processing. *Id.* Fourth, Commerce found that the extent of Trina's and Canadian Solar's production facilities (including the size, capacity, and number of employees for each company's factories) were not minor or insignificant when compared to their Chinese affiliates' production facilities. Appx8478. Thus, Commerce found that the fourth factor weighed against minor or insignificant processing. *Id.* Fifth, Commerce found that the value of processing in Thailand carried out by Canadian Solar represents a small proportion of the total value of each company's exports of solar cells to the U.S., but that the value

performed by Trina was not a small proportion of the total value. *Id.* Thus, the fifth factor weighed in favor of a minor or insignificant processing for Canadian Solar, but against for Trina. *Id.*

In analyzing level of investment, level of research and development, and extent of production facilities (subparagraphs (A), (B) and (D)), Commerce compared the respondents' production of solar cells and modules in Thailand and their affiliates' production of polysilicon ingots and wafers in China. Appx8479-8481.

Commerce evaluated the totality of the five 19 U.S.C. § 1677j(b)(2) factors and concluded that the production process in Thailand for Trina and Canadian Solar was minor or insignificant. Appx8472-8478. Commerce explained that, for the purposes of its analysis, it had placed special emphasis on the level of R&D carried out in Thailand because of the uniquely complex nature of solar cell and module production. *Id.* Commerce further elaborated in its preliminary analysis memorandums for Canadian Solar and Trina. Specifically, Commerce emphasized that, in Thailand, Trina "relied on its affiliates in China to 'improve technologies and keep its production process and products up to date with changing technology.'" Appx8498. Commerce also considered the difference in value of the R&D between China and Thailand, pointing that both Canadian Solar and Trina's affiliate companies continued to heavily invest in R&D in China compared to Thailand. *Id.*; Appx8506.

Further, turning to the additional factors "such as" those under 19 U.S.C. § 1677j(b)(3), Commerce considered patterns of trade, level of affiliation between the

respondents and their Chinese suppliers, and whether imports of solar inputs to Thailand from China had increased following the initiation of the investigation which led to the *Solar Orders*. Appx8479-8481. Commerce first found under subparagraph (C), based on publicly available import data, that the level of imports of solar cells from Thailand to the United States increased dramatically during the period from 2011 (the year of the initiation of the investigation which led to the *Solar Orders*) to 2021 (the year in which the underlying circumvention inquiries were initiated). Appx8480. Commerce found that the publicly available trade data evinced a shift in export volume to the United States from China to Thailand, and therefore supported a finding of circumvention. *Id.* Commerce also found that the trade patterns of individual respondents, while business proprietary, also supported a finding of circumvention. *Id.*; Appx8500-02; Appx8508-09.

Second, Commerce examined the record through the prism of subparagraph (B) and found that Trina is a subsidiary of Trina Solar Co., Ltd., a Chinese company, and is part of the Trina group of Chinese solar producers. Appx8480; *see also* Appx8502. Commerce found that Canadian Solar is a subsidiary of Canadian Solar Inc., a Canadian company that is part of the Canadian Solar group that includes Chinese solar producers. Appx8481; *see also* Appx8510. Commerce also found that both respondents are affiliated with Chinese producers that provided them parts and components for producing solar cells in Thailand. Appx8480-81.

Third, Commerce found under subparagraph (C) that imports of wafers and other solar inputs from China to Thailand increased from 2008 (the year of initiation of the underlying solar investigations) to 2021 (the of initiation of the circumvention inquiries). Appx8481. Commerce ultimately concluded that all three of these factors weighed in favor of a finding that solar cells further processed or completed in Thailand are circumventing the *Solar Orders*. *Id.*

After the *Preliminary Determination*, interested parties filed comments. Appx10431, Appx10465. Commerce made no significant changes in the *Final Results*, and continued to find that Trina and Canadian Solar circumvented the *Solar Orders* and that circumvention was occurring in Thailand on a country-wide basis. *See generally* Appx10559-10685.

In response to comments, Commerce explained in the final determination that it applied a "a comparative approach that account[ed] for the production activities of the upstream affiliates of the third country producers." Appx10581. Commerce added that, for the purposes of this inquiry, it placed particular emphasis on the affiliation between the Thai respondents and their Chinese parent companies. *Id.*

Commerce also explained its rationale for weighing the level of R&D over the other 19 U.S.C. § 1677j(b)(2) "minor or insignificant" factors, and its findings with respect to each factor. Appx10597-10625. Commerce explained that, when considering the circumvention production scenario here, it was necessary to take into account that "R&D of one company is not necessarily compartmentalized when it

comes to its affiliates" because "[a]ffiliated companies may share R&D." Appx10602. Commerce emphasized that the record evidence demonstrated that R&D had a "preeminent importance in the solar industry," where new technology and the most modern equipment are necessary "in the current competitive market environment." Appx10623. And even further, Commerce found that the record indicated that R&D in wafer production was the most important to the solar cell manufacturing, which "is exclusively performed by the Chinese affiliates." Appx10624.

Thus, Commerce found that the pattern of R&D being performed in China while some production occurred in Thailand "mirrors the typical pattern of circumvention where everything of importance remains in the order country, while only minor processing is done outside the country." Appx10624. Commerce emphasized that "[a]side from the operations necessitating a physical presence in Thailand . . ., everything is either done in China or is a result of actions done by the Canadian Solar and Trina Groups' headquarters in China." Appx10625. Accordingly, Commerce stated that even though the majority of the factors weighed in favor of finding that the process of assembly or completion in Thailand was minor or insignificant,, the totality of the record evidence and the factors warranted a finding that the process of assembly or completion in Thailand was minor or insignificant. *Id.*

Lastly, Commerce affirmatively determined that, after a full analysis of the record and the factors under section 1677j(b), solar cells from Thailand were circumventing the *Solar Orders*. Appx10634. Following section 1677j(b)(1)(E),

Commerce explained action is appropriate to prevent evasion of the *Solar Orders*. Appx10634-35. Accordingly, Commerce exercised its statutory discretion to treat the solar cells processed in Thailand as within the scope of the *Solar Orders*. *See* 19 U.S.C. § 1677j(b)(1).

## III.    Prior Proceedings

Following Commerce's final determination, plaintiff-appellants filed lawsuits in the CIT challenging Commerce's decision. In May 2025, the CIT affirmed Commerce's circumvention decision. Appx6. Addressing the section 1677j(b)(2) factors, the court held that the statute provides Commerce "maneuvering room to weigh the relevant factors based on the circumstances," which Commerce reasonably weighed and considered in its determination. Appx15. Further, the court found that Commerce reasonably explained why it emphasized the R&D factor in the solar industry context, and specifically R&D of wafer production occurring in China, as the driver of the solar industry. Appx17-19. And the CIT acknowledged that, while some record evidence demonstrated that the Thai-based cell and module production was major manufacturing, the record did not compel such a finding, deferring to Commerce's reasonably weighing of the record evidence. Appx22.

The CIT also considered Commerce's section 1677j(b)(2) analysis that plaintiff-appellants' "major or ultimate decisions" were arranged or controlled by affiliates in China. Appx20-21. The CIT agreed with plaintiff-appellants that the statute instructed Commerce to consider affiliation, part of section 1677j(b)(3) only after

finding section 1677j(b)(1) satisfied.  *Id.*  However, the CIT found that this was harmless error because Commerce put dispositive weight on R&D and that all high-tech inputs and the Thai-based production machinery were produced in China.  Appx21 (citing *Al Ghurair II*, 65 F.4th at 1363).  Thus, the CIT held that Commerce substantial evidence supported a finding of minor or insignificant processing in Thailand.  Appx28.

Finally, the CIT determined that Commerce reasonably explained why the circumvention order was appropriate to prevent evasion of the *Solar Cells Orders*.  Appx28-30.  The CIT credited that Commerce found that the evasion would occur unless Thai solar cells and modules were included within the scope of the China orders, which is all section 1677j(b)(1) required.  *Id.*  Accordingly, the CIT sustained Commerce's circumvention determination.  Appx30.

## SUMMARY OF ARGUMENT

The CIT's judgment should be affirmed because Commerce's final determination is the result of a careful balancing of factors for a particularly unique industry.  Congress delegated to Commerce the job of weighing these factors and was explicit that there was no magic formulation or weighing.  Commerce's determination here is supported by substantial evidence and in accordance with law.

First, the statute provides Commerce significant discretion to investigate circumvention, and to weigh the relevant factors, according to the particular production scenario.  The discretion is not implied, nor does it require analysis under

15

*Loper Bright*. Rather, it is built into the statute explicitly and then confirmed by the SAA, which is the authoritative statement of Congress's intent. Consistent with the congressional directive to evaluate the paragraph (b)(2) factors according to the particular circumvention scenario in the case, Commerce found that this scenario involved vertically integrated Chinese producers spinning off the final stage of production into Thailand. Based on that scenario, Commerce reasonably found that the fungible nature of R&D warranted emphasizing that factor.

Second, Commerce's finding that plaintiff-appellants' level of R&D in Thailand weighed in favor of finding the process of assembly or completion in Thailand was minor or insignificant is supported by substantial evidence. When evaluating whether third-country processing is minor or insignificant, Commerce follows its practice, approved by this Court, of comparing third-country production to the entire production process. Applying this methodology, Commerce found that the level of R&D in Thailand is minor relative to that of its Chinese parent.

Third, Commerce's finding that the value added by Canadian Solar in Thailand was small is supported by substantial evidence. In response, Canadian Solar urges that Commerce should have considered the qualitative nature of the production process as part of the value added in Thailand. But Commerce appropriately followed the statute and legislative history to determine the value of processing performed in Thailand on a quantitative basis.

In total, plaintiff-appellants' arguments seek to have this Court impermissibly re-weigh record evidence or limit the substantial discretion Commerce receives under the statute. Commerce lawfully weighed the relevant factors, considered the record evidence, and arrived at a reasoned explanation for the decision. This Court should sustain Commerce's determination.

## ARGUMENT

### I. Standard of Review

This Court reviews decisions of the CIT de novo and applies the same standard as the CIT in its review of Commerce's final determinations. *Mosaic Co. v. United States*, 160 F.4th 1340, 1346 (Fed. Cir. 2025). Under that standard, this Court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise no in accordance with law." *Id.* (quotations omitted); 19 U.S.C. § 1516a(b)(1)(B).

### II. Commerce Reasonably Weighed the Section 1677j(b)(2) Factors to Find that the Process of Assembly or Completion in Thailand Was Minor or Insignificant

To find that merchandise assembled or completed in a third country circumvents an order, Commerce must find the third-country production process to be minor or insignificant. 19 U.S.C. § 1677j(b)(1)(C). The statute provides five factors that Commerce "shall take into account" when determining whether the production process is minor or insignificant but does not otherwise instruct Commerce how to evaluate the factors. The authoritative legislative history directs

Commerce to evaluate the factors "depending on the particular circumvention scenario" and that "[n]o single factor will be controlling." SAA at 893. Congress recognized the need for Commerce to have "flexibility in administering this standard[.]" S. Rep. No. 103-412 at 82 (1994).

Considering the totality of the factors, Commerce reasonably found that the production process completed in Thailand for both plaintiff-appellants was minor or insignificant. Although Commerce found that some factors did not support a finding of circumvention, Commerce reasonably placed greater weight on the R&D factor, among other record evidence, to find that the process of assembly or completion in Thailand was minor or insignificant within the meaning of 19 U.S.C. § 1677j(b)(2). This determination was supported by reasoned explanation and accordingly by substantial evidence.

## A.    *Loper* Does Not Apply

As stated above, to find circumvention, Commerce must determine "the process of assembly or completion in the foreign country . . . is minor or insignificant." 19 U.S.C. § 1677j(b)(1)(C). Instead of defining "minor or insignificant," the statute expressly provides five factors that Commerce "shall take into account." *Id.* § 1677j(b)(2). When Congress has prescribed factors but not their relative weight, the agency is granted "a great degree of discretion in balancing them." *Lignite Energy Council v. United States EPA*, 198 F.3d 930, 933 (D.C. Cir. 1999) (holding that the Environmental Protection Agency was granted discretion to balance factors

in 42 U.S.C. § 7411(a)(1) because no one factor was controlling).  The CIT found that Commerce reasonably weighed these factors in order to find that plaintiff-appellants' Thailand operations were minor or insignificant.  Appx28.  Now, Canadian Solar asserts that the CIT erred by failing to perform a statutory analysis to determine what "minor or insignificant" meant.  Canadian Solar Br. at 25-32.  Not so.

Canadian Solar erroneously contends the interpretation of the phrase "minor or insignificant" requires its statutory interpretation and that Commerce is afforded no discretion.  Canadian Solar Br. at 25-32.  Specifically, Canadian Solar argues that the CIT erred by not interpreting the phrase and "focusing instead narrowly on the five subfactors" set forth in section 1677j(b)(2).  *Id.* at 28, 32.  But the five factors are what Congress specifically directed Commerce to "take into account."  They provide the context for the analysis.  It was no error to focus on Commerce's treatment of them.

Although the meaning of a statutory term is a legal question, *see Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 391-92 (2024), Congress may "leave [] agencies with flexibility" by using open ended terms, *id.* at 395.  As this Court has recently held, Congress frequently provides Commerce "reasonable flexibility in assessing" statutory terms.  *See Mosaic Co. v. United States*, 160 F.4th 1340, 1347 (Fed. Cir. 2025).  This flexibility is confirmed by the statute here, which articulates the specific factors Commerce "shall take into account."  19 U.S.C. § 1677j(b)(2) ("Determination of whether process is minor or insignificant"); *see also Lignite Energy Counsel*, 198 F.3d at 933; *Hanon Systems Alabama Corp. v. United States*, 794 F. Supp. 3d 1348, 1357 (Ct. Int'l

Trade 2025) (holding that the circumvention statute provides Commerce "fact-intensive flexibility"). As the CIT correctly noted here, "[t]he SAA confirms this understanding, explaining that the agency evaluates the factors 'depending on the particular circumvention scenario.'" Appx16 (quoting SAA at 893). But in appellants' view, the CIT should have, and this Court should now evaluate for itself, independently from the five factors, whether the evidence supported circumvention. The Court should not independently interpret "minor or insignificant" outside the context of the five factors. It would be contrary to the plain language of the provision, and would replace the discretion specifically given to Commerce, with the Court's own analysis.

Relatedly, appellants contend that Congress intended to capture only the so-called "screwdriver operations," in which the finishing in a third country or the United States requires just a screwdriver to accomplish. Canadian Solar Br. at 29-30; Trina Br. at 29-30. It is true that the SAA explains that one of the purposes of the circumvention statute is to "address the circumvention of . . . orders through the establishment of screwdriver assembly operations," and that "it is relatively easy for a foreign exporter to circumvent . . . by establishing a screwdriver operation in the United States." SAA at 893-94.

But Congress's use of the term "screwdriver operations" does not limit the statutory definition of "minor or insignificant." Rather, as the CIT has explained, "[t]he SAA provides that one goal . . . is to address 'screwdriver operations' that may

be circumventing AD/CVD orders, but it is not the *only* goal." *Hanon Systems*

*Alabama*, 794 F. Supp. 3d at 1357 (quoting SAA at 898). Importantly, the SAA

explains that "the overall thrust of section 230 of the bill [ ] is to focus the

anticircumvention inquiry on the question of whether minor or insignificant assembly

or completion is taking place," and that "sections 781(a)(2) and 781(b)(2)" list the five

factors to determine whether assembly or completion is minor or significant. SAA at

894.

Commerce's role is to evaluate whether process of assembly or completion of

solar cells in Thailand is "minor or insignificant" given the statutory criteria in 19

U.S.C. § 1677j(b)(2), and nothing in the SAA limits the application of the statute to

only a "screwdriver operation."

## B. Commerce Has No Practice of Requiring a Majority or Specific Combination of the Section 1677j(b)(2) Factors

Appellants argue that Commerce unlawfully deviated from an alleged past

practice by finding circumvention without a majority of the factors weighing in favor

of such a finding. *See* Canadian Solar Br. at 40-43; Trina Br. at 48-51. However, as

the CIT correctly recognized, if Commerce "were . . . to adopt such a wooden policy,

it would conflict with the statute, which affords the Department maneuvering room

to weigh the relevant factors based on the circumstances." Appx15.

Appellants identify no instance when Commerce has articulated a "practice"

for determining whether a given production process is minor or insignificant. Were

Commerce to have such precedent, it would be contrary to congressional intent. The minor or insignificant factors are intended to leave Commerce with "flexibility" in administering the statute. S. Rep. 103-412 at 82. Moreover, Commerce evaluates the factors "depending on the particular circumvention scenario." SAA at 893. Any firm rule or practice requiring a majority of the factors would effectively reduce Commerce's minor or insignificant determinations to a counting exercise that would frustrate Commerce's ability to ascribe weight to the factors according to the circumvention scenario. *See Hanon Systems Alabama*, 794 F. Supp. 3d at 1364 ("Rather, this court has repeatedly sustained circumvention analyses by Commerce where two or fewer of the five statutory factors supported a circumvention finding.").

Likewise, as the CIT recognized, Appx15, Commerce's circumvention determination with respect to Malaysia does not contradict its determination in this case, as appellants say it does. *See* Canadian Solar Br. at 43-44 (citing *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*, 88 Fed. Reg. 57419 (Dep't Commerce Aug. 23, 2023) and accompanying Issues and Decision Memorandum (Malaysia) (*Malaysia IDM*) at 50). Rather, Commerce's finding with respect to Jinko Solar Technology Sdn. Bhd. and Jinko Solar (Malaysia) Sdn. Bhd. (Jinko) in the Malaysia matter are entirely consistent with Commerce's finding in this case. Commerce found Jinko's level of R&D in the third country (Malaysia) *not* minor. *Malaysia IDM* at 49. The only factor supporting a minor or insignificant finding for Jinko was the extent of the production facilities in the third

country, *id.* at 51, and thus Commerce's decision regarding Jinko's overall processing in Malaysia is consistent with Commerce's decision in this case to place special emphasis on the R&D factor.

Relatedly, Trina asserts that Commerce's finding that the process of assembly in Thailand is minor or insignificant cannot be reasonable because Commerce found that the nature of the production process was not minor or insignificant. *See* Trina Br. at 30-34. Trina suggests that "Commerce has never previously reached an affirmative finding of circumvention where it also found that the nature of production process was not minor or insignificant." *Id.* at 33. In Trina's view, it should be impossible for Commerce to determine a process is minor or insignificant unless Commerce finds that the nature of the production process is insignificant. *See id.* ("Among the five [factors], the nature of processing factor is more encompassing of the other factors."). Trina is wrong.

The SAA could not be more clear that, "*[n]o single factor will be controlling.*" SAA at 893 (emphasis added). Trina would rewrite this direction to say "one single factor will be controlling." That is not the statutory scheme that Congress created, which instead instructs Commerce to balance five independent methods that could suggest that processing is minor or insignificant, "depending on the particular circumvention scenario." SAA at 893. Commerce carefully explained why it found the nature of processing in Thailand to be not minor or insignificant, and then explained why, because of R&D, Commerce found that the assembly in Thailand was minor or

23

insignificant.  Appx10623-26.  As the CIT correctly recognized, Commerce acted well

within its discretion to weigh the record evidence and statutory factors here.  *See*

Appx16; *In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013) ("Where two different,

inconsistent conclusions may reasonably be drawn from the evidence in [the] record,

an agency's decision to favor one conclusion over the other is the epitome of a

decision that must be sustained upon review for substantial evidence."); *SolarWorld*

*America, Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018) (same).

Commerce did exactly what the statute charges it to do—it considered the facts

of a particular production scenario in light of the statutory factors, weighed them

according to the record evidence, and rendered a finding on the totality of the

evidence.  As this Court has recognized, when "[t]he governing statute and

implementing regulations do not prescribe any mandatory methods that Commerce

must employ[,] . . . it is a fact-intensive and case specific inquiry, where the factors

involved and the weight accorded to them vary from case to case."  *Government of*

*Quebec v. United States*, 105 F.4th 1359, 1374 (Fed. Cir. 2024) (quoting *Royal Thai Gov't*

*v. United States*, 436 F.3d 1330, 1335-36 (Fed. Cir. 2006)).

### C.  Commerce's Emphasis of the R&D Factor Is Supported by Substantial Evidence

Appellants challenge both the weight Commerce put on R&D, as well as

Commerce's evaluation of Trina and Canadian Solar's particular Thai-based R&D.

These arguments are unavailing because Commerce evaluated the specific record

evidence and adequately emphasized that R&D—the driver of the solar industry—is disproportionately critical compared to the other factors.

### 1. Commerce Supported the Particular Emphasis on R&D

The statute directs Commerce to consider the level of R&D in assessing whether the production process in a third country is minor or insignificant. 19 U.S.C. § 1677j(b)(2)(B). Commerce found that the level of R&D carried out in Thailand by appellants was minor, evidencing circumvention of the *Solar Orders*. Appx1061-02. This determination is supported by substantial evidence.

Commerce first found that R&D is a particularly important factor in the solar industry. In 2021 alone, the Trina Group invested $150 million and the Canadian Solar Group invested $58 million in R&D. Appx10623 (citations omitted). LONGi, another leading Chinese solar producer, invested over $400 million in R&D in 2020. *Id.* Considering these facts, Commerce found that technological "efficiency in the solar industry is an important measurement of a producer's success," and that "[f]actories that lack the most modern equipment can become obsolete quickly." *Id.* Therefore, as the CIT recognized, Appx17-18, substantial evidence supports Commerce's determination that R&D "has preeminent importance in the solar industry" and is "the driver of the solar industry." Appx10623, Appx10625.

Whether R&D is or is not a critical consideration depends on the industry. For example, Commerce has found in other circumvention determinations that R&D *is not* an important factor. *See Light-walled Rectangular Pipe and Tube From the People's Republic of*

*China* 88 Fed. Reg. 21,985 (Dep't of Commerce Apr. 12, 2023) (prelim. circumvention det.), and accompanying PDM at 21 (finding that that "a lack of significant [R&D] expenses with respect to [subject merchandise] does not necessarily mean that the processing in Vietnam is minor or insignificant."); *Hot-Rolled Lead and Bismuth Carbon Steel Products from Germany and the United Kingdom*, 64 Fed. Reg. 40,336, 40,339 (Dep't of Commerce Jul. 26, 1999) (final circumvention det.) (*Hot-Rolled Lead from Germany*) ("Because the rolling of hot-rolled lead bar is a technically mature process, [R&D] is not a significant factor in this industry.").  Although appellants argue that Commerce acted inconsistent with these decisions, *see* Trina Br. at 49-50; Canadian Solar Br. at 44-45, these decisions instead demonstrate that Commerce adapts its reasoning to the facts of the production scenario under review and the evidence before it.  Naturally, Commerce would find differently here, when it had found that R&D is particularly important to solar cell production, rather than the importance of R&D to the production of certain pipe and tube products.  *See* Appx10625.

Here, Commerce found that the circumvention scenario in this case centered on Chinese input suppliers and their parent companies using a fully-integrated supply chain to circumvent the *Solar Orders*.  Appx10581 (citing Appx72-73).  Commerce's factual findings clarify the nature of the relationship between the Thai producers and their affiliated Chinese suppliers.  Specifically, Commerce found that nearly all or all of the investment necessary to operate Trina's and Canadian Solar's Thai facilities were arranged by Chinese parent companies.  Appx10624 (citing Appx6512;

Appx5373).  Commerce found that China is the country of origin of the machinery used by both respondents to produce solar cells in Thailand.  Appx10635 (citing Appx8355-Appx8448; Appx8325-8328).  Commerce also found that both Thai producers sourced all or nearly all of the most valuable, high-tech inputs—wafers, silver paste, solar glass, aluminum frames, junction boxes, and backsheet—from China.  Appx10625.  These inputs (wafers, silver paste, solar glass, aluminum frames, junction boxes, and backsheet) are the "most important" to solar cell and module production.  Appx10667 n.551 (citing Appx233-59).[3]  And China dominated the market for polysilicon wafers, which is the primary upstream solar cell input, accounting for nearly all global production.  Appx10584 (citing Appx99-101); *see also* Appx244.

These facts, taken in totality, present Commerce with a circumvention scenario in which "large solar conglomerates are incentivized to 'spin off' production of solar cells into third countries, and in which third country producers are left with little choice but to source solar wafers from China."  Appx10584.  This scenario, in conjunction with the importance of R&D to the solar industry, warrants Commerce's particular emphasis on R&D here because the "nature of R&D is such that, once carried out, it is easily transmissible across borders."  *Id.*  As Commerce described,

---

[3] This report, from Bloomberg, is publicly available at https://www.csis.org/analysis/industrial-policy-trade-and-clean-energy-supply-chains, last visited February 26, 2026.

this production scenario "mirrors the typical pattern of circumvention where everything of importance remains in the order country, while only minor processing is done outside the country." Appx10624.

Appellants contend that, because the cell and module stages of the production are technically complex relative to the overall production process for solar modules, and because those stages were carried out in Thailand, Commerce wrongly emphasized the R&D factor. Canadian Solar Br. at 46-48; Trina Br. at 41-44. This misconstrues Commerce's finding. Commerce found that cell and module production are more versatile than wafer production and can be easily relocated to third countries. Appx10624 (quoting Appx248). This finding is relevant because the remainder of the paragraph 1677j(b)(2) "minor or insignificant" factors (level of investment, nature of the production process, extent of the production facilities, and value added in the third country) fail to account for the relative ease with which the cell and module stages of the production process, even if technically complex, can be relocated to a third country. In other words, it is the fungible nature of R&D that enables circumventing behavior. Appx10624 (finding that R&D "only needs to be done once and can be done at any location."). Therefore, the extent to which R&D is carried out in China—instead of the third country—is particularly relevant under this circumvention scenario. By contrast, when the investment, inputs, or manufacturing equipment used to produce solar modules are largely facilitated by Chinese producers, those factors are still accounted for in Commerce's analysis as Thai production. In

this case, the wide disparity in R&D expenses incurred by the respondents' affiliates in China and the expenses incurred in Thailand demonstrates the true extent of the production process occurring in China.

Appellants also contend that Commerce failed to consider factual evidence pertaining to the nature of Canadian Solar's R&D in Thailand, including the number of employees dedicated to R&D and the specific research carried out in Thailand, and disputes Commerce's finding that R&D was minor. *See* Canadian Solar Br. at 55-58. But Commerce directly addressed these considerations and found that the "amount spent on R&D" outweighed those considerations. Appx10602. Because "substantial evidence review does not permit [this Court] to reweigh the evidence," the Court should sustain these findings. *Al Ghurair II*, 65 F.4th at 1359; *SolarWorld*, 910 F.3d at 1222. As the CIT correctly found below, Commerce engaged with Canadian Solar's evidence, showing that "Canadian Solar's R&D expenditures in China were more than four times greater than such costs in Thailand." Appx23. This more than supports Commerce's reasonably weighing of the evidence here.

Finally, Canadian Solar asserts that Commerce treated R&D to be a "controlling" factor, contrary to the SAA's instruction that "No single factor will be controlling," SAA at 893, and suggests that reliance on the R&D factor is "particularly troubling" when it is not about the manufacturing process. *See* Canadian Solar Br. at 34-36. Again, Canadian Solar misinterprets the SAA by excluding the prior sentence, which instructs that "Commerce will evaluate each of these factors . . ., depending on

the particular circumvention scenario." SAA at 893. Treating a single factor as controlling would be ignoring the facts of a particular circumvention scenario, or finding circumvention in any review if Commerce found a specific factor met. The statute instructs Commerce to consider each factor in every review, and there is nothing suggests that some factors are more important than others or that certain factors are *prima facie* less relevant, as Canadian Solar's argument implies.

Instead, Commerce "t[ook] into account," *see* 19 U.S.C. 1677j(b)(2), each factor, considered the record evidence and particular scenario, and reasonably concluded that R&D had outsized importance for the solar industry and this circumvention scenario. Commerce fully explained its rationale for weighing the totality of the factors, and appellants offer nothing more than disagreements with Commerce's methodology.

### 2. Commerce Reasonably Considered Affiliation in its Analysis, and, Regardless, Any Alleged Error Was Harmless

As part of Commerce's section 1677j(b)(2) analysis, Commerce attributed less weight to its negative findings on some factors because Chinese affiliates controlled plaintiff-appellants' "major or ultimate decisions" and arranged "nearly or all" of the necessary investment in Thailand. Appx10624. The CIT found that this was an error, but a harmless one. *See* Appx20-21. Appellants disagree, contending that this was prejudicial error because it undermines Commerce's factual findings and emphasis on

R&D.  *See* Canadian Solar Br. at 36-40; Trina Br. at 44-48.  However, Commerce committed no error in analyzing the affiliation relationships.[4]

The CIT determined that the statute created an "if/then" analysis, where "if" Commerce finds section 1677j(b)(1) satisfied (i.e. circumvention of the order), "then" Commerce considers the section 1677j(b)(3) factors to determine if the order need be expanded to encompass the circumventing merchandise.  *See* Appx20.  While we agree that section 1677j(b)(1) contains an "if/then" condition, we respectfully disagree with the CIT's holding that it was a legal error for Commerce to consider affiliation concurrently with the section 1677j(b)(2) factors.

Specifically, section 1677j(b)(1) states that, "[i]f" Commerce finds that each (A)-(E) factor is met, Commerce "may include such imported merchandise within the scope of such order or finding."  19 U.S.C. § 1677j(b)(1).  Or, in other words, if Commerce finds that circumvention is occurring and taking action is appropriate, then Commerce may include the circumventing good within scope of the orders.  *Id.* Separately, the statute provides that Commerce "shall take into account" the 1677j(b)(3) factors "[i]n determining whether to include merchandise . . . or finding under paragraph (1)."  *Id.*  And as part of the "finding under paragraph (1),"

---

[4]  There was no need for the United States to appeal this error finding because judgment was entered for the United States, and this Court may affirm on any ground. *See Droplets, Inc. v. E\*TRADE Bank*, 887 F.3d 1309, 1322 (Fed. Cir. 2018*)* ("we have said that a cross-appeal is only proper when acceptance of the argument advanced would result in a reversal or modification of the judgment rather than an affirmance.") (cleaned up).

Commerce considers whether processing was "minor or insignificant." *See id.*
§ 1677j(b)(1).

It is clear that Commerce must consider the section 1677j(b)(3) factors when making a circumvention determination. *See id.* § 1677j(b)(3). However, nothing in the statute plainly states that Commerce shall not consider these factors in conjunction with other steps in the circumvention analysis. Even this Court has previously analyzed section 1677j(b)(2) and (b)(3) factors concurrently. *See Al Ghurair II*, 65 F.4th at 1358-62 (analyzing section 1677j(b)(2) and 1677j(b)(3) factors together to determine whether the factors "evidence[] circumvention."). Considering that Congress intended for Commerce to consider the "particular circumvention scenario," SAA at 893, in evaluating the minor or insignificant factors, it would be bizarre for Congress to have arbitrarily limited the information Commerce could consider in its determination. Instead, this instruction suggests that the discretionary paragraph 1677j(b)(3) factors—which include trade patterns as well—can guide Commerce's overall minor or insignificant determination. *See Syneren Technologies Corp. v. United States*, 166 F.4th 1040, 1044 (Fed. Cir. 2026) ("Here, the proper inquiry is whether any statute or regulation prohibits the unilateral use"); *Tyler Constr. Grp. v. United States*, 570 F.3d 1329, 1333 (Fed. Cir. 2009) ("[T]he proper inquiry is not whether the FAR authorizes the use . . ., but whether there is any statutory or regulatory provision that precludes such use."); *see also Government of Quebec*, 105 F.4th at 1374. Absent explicit congressional guidance otherwise, Commerce's reasonable

methodology should stand. *Al Ghurair Iron & Steel LLC v. United States (Al Ghurair I)*, 536 F. Supp. 3d 1357, 1374 (Ct. Int'l Trade 2021).

Regardless, even assuming that Commerce erred, the CIT correctly held that any error was harmless. *See* Appx21. As the CIT credits, Commerce provided many other reasons why negative section 1677j(b)(2) findings deserved less weight, including that all of the production machinery and high tech inputs were produced in China. *Al Ghurarir II*, 65 F.4th at 1363 ("Commerce's finding . . . was supported by many findings other than its [erroneous] calculation of [the plaintiff's] value added."). Further, Commerce correctly emphasized the importance of R&D in its evaluation, and, as demonstrated above, that finding is supported by substantial evidence.

### D. Commerce's Weighing of the Value of Processing in Thailand Is a Rational Methodology Supported by Substantial Evidence

Commerce calculated the value of processing in Thailand by summing the per-unit costs incurred by each respondent in Thailand for non-Chinese inputs, and divided that number by the per-unit average value of the respondents' U.S. sales during the period of the inquiry. Appx8478 (unchanged in *Final Results*). By applying that methodology, Commerce determined the value added in Thailand for Canadian Solar. Appx8507. Commerce found that the valued added in Thailand, roughly one-third of the total value of sale, was a small proportion, which weighed in favor of minor or insignificant processing. Appx10617. In essence, this meant that the value

of expenses occurred by Canadian Solar in Thailand were one third of the sale price of the solar module to the United States.

First, Canadian Solar argues that Commerce's evaluation of the value added in Thailand is unreasonable because, in its view, one-third cannot be considered a small proportion. *See* Canadian Solar Br. at 50. As Commerce expressly considered in its determination, however, the SAA noted that the statute "d[id] not establish rigid numerical standards for determining the significance of the assembly. SAA at 894. Commerce explained in its decision memorandum that it has found similar amounts to be a small value add before. Appx10618 (citing *Certain Corrosion-Resistant Steel Products from the People's Republic of China: Affirmative Preliminary Determination of Circumvention Involving Malaysia*, 85 Fed. Reg. 8,823 (February 18, 2020) (unchanged in final) ("the value-added by CORE producers . . . is approximately 10 percent to 31 percent.").

As evidence, Canadian Solar points to dictionary definitions of "Small." *See* Canadian Solar Br. at 50 (citing *Small*, Merriam-Webster Dictionary, https://www.merriamwebster.com/dictionary/small). However, instead of presenting any of Merriam-Webster's primary definitions, Canadian Solar jumps to the fourth: "little or close to zero in an objectively measurable aspect (such as quantity)." *Id.* The first listed definition, "having comparatively little size," or second, "minor in influence, power, or rank," are much more on point for Commerce's determination. *Small*, Merriam-Webster Dictionary, https://www.merriam-

webster.com/dictionary/small (last accessed Feb. 26, 2026). One third of total value is "comparatively little" of the value compared to China, and the value added (or processing in general) in Thailand is "minor" in comparison. *See id.* Commerce's reasonable exercise of its expertise passes muster here, in light of the SAA's emphasis that there are no "rigid numerical standards." *See* SAA at 894.

Second, Canadian Solar contends that Commerce failed to consider the nature of the production process as part of its evaluation of the value added by Canadian Solar in Thailand. Canadian Solar Br. at 51-54. But the plain language of section 1677j(b)(2)(E), which provides that Commerce shall consider "whether the *value* of the processing performed in the foreign country represents a *small proportion* of the *value* of the merchandise imported into the United States," envisions some quantitative analysis. To that end, Commerce found that, in the context of value added in the third country, "the word 'value' denotes monetary value." Appx10615.

Canadian Solar, citing legislative history, maintains that Congress intended "a more qualitative focus on the nature of the production process." Canadian Solar Br. at 51 (citing SAA at 894) (quotations excluded). However, the "nature of the production process" is separately accounted for by paragraph 1677j(b)(2)(C). It would be illogical to evaluate the nature of the production process under both 19 U.S.C. §§ 1677j(b)(2)(C) and 1677j(b)(2)(E). This would double-count the nature of the production process within the totality of the factors. Of course, a statutory term should not "needlessly be given an interpretation that causes it to duplicate another

provision or to have no consequence." *Nielsen v. Preap*, 586 U.S. 392, 139 S. Ct. 954, 969 (2019) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012)).

Importantly, the qualitative "nature of the production process" is already a facet of Commerce's minor or insignificant determination, as provided by 19 U.S.C. § 1677j(b)(2)(C). It would be duplicative for Commerce to evaluate the qualitative nature of the production process pursuant to section 1677j(b)(2)(C) and then simply reevaluate the qualitative nature of the production process under section 1677j(b)(2)(E). And there is no doubt that Commerce performed a qualitative analysis of appellants' production process in Thailand under section 1677j(b)(2)(C). *See* Appx10607-11; *see also Hanon Systems Alabama*, 794 F. Supp. 3d at 1362 ("Clearly, Commerce did consider qualitative factors like the complexity of the production of such product.").

Further, the CIT has sustained Commerce's value-added methodology:

> Because [19 U.S.C. § 1677(b)] does not mandate the use of a particular formula, Commerce has the ability to choose how to calculate the value-added percentages as long as its chosen methodology is reasonable and Commerce explains its choice. Commerce is required neither to use a party's proffered and preferred methodology, nor to provide an explanation for a decision not to use an alternative methodology offered by a party.

*Al Ghurair I*, 536 F. Supp. 3d at 1374. So even if Canadian Solar's methodology were permissible, absent a clear statutory directive, Commerce's choice is lawful.

Further Canadian Solar misreads the legislative history. Congress stated that the statue would "not establish rigid numerical standards . . . for determining the significance of the value of the imported parts or components." SAA at 894. That is not equivalent to Congress stating that Commerce *cannot* consider quantitative value. *See* Canadian Solar Br. at 51. Instead, the legislative history explains that a rigid "standard substantially limiting the effectiveness of the" previous law. SAA at 893. The purpose, therefore, is to provide Commerce discretion to evaluate the value-added factor "depending on the particular circumvention scenario." *Id.*

Canadian Solar further contends that Commerce's practice is to consider qualitative factors as part of its evaluation of the value added in the third country. Canadian Solar Br. at 52-55 (citing *Hot-Rolled Lead and Bismuth Carbon Steel Products from Germany and the United Kingdom*, 64 Fed. Reg. 40,336, 40,347 (Dep't Commerce Jul. 26, 1999) (*Hot-Rolled Lead from Germany*) (final det.); *Certain Corrosion-Resistant Steel Products from Taiwan*, 84 Fed. Reg. 32,864 (Dep't Commerce July 10, 2019) (prelim. admin. det.) and accompanying IDM; *Small Diameter Graphic Electrodes from the People's Republic of China*, 77 Fed. Reg. 33,405, 33,413 (Dep't of Commerce Jun. 6, 2012) (prelim. det.). However, so long as Commerce explains itself, it is not bound by its prior determinations. *Al Ghurair II*, 65 F.4th at 1360 (citing *Hyundai Elec. & Energy Sys. Co. v. United States*, 15 F.4th 1078, 1089 (Fed. Cir. 2021); *Save Domestic Oil, Inc. v. United States*, 357 F.3d 1278, 1283–84 (Fed. Cir. 2004)). With respect to the cases cited by Canadian Solar, Commerce, in this case, explained that,

> Commerce applied Congress's direction to focus more on the nature of
> the production process and less on value with respect to *the overall decision
> of whether processing is minor or insignificant* or the overall determination of
> whether circumvention is occurring and not its determination under [19
> U.S.C. § 1677j(b)(2)(E)].

Appx10617 (emphasis added). In other words, the SAA requires Commerce to

consider the nature of the production process only when assessing whether the

production process *as a whole* is minor or insignificant. Commerce thus considered

the nature of the production process separately from its evaluation of the value added.

Appx10607-11.

Commerce's reasoning is consistent with the SAA. Although Commerce has

acknowledged that "Congress directed the agency to focus more on the nature of the

production process and less on the difference between the value of the subject

merchandise and the value of the parts and components imported into the processing

country[]," this must be understood within the context of the statute that pre-dated

the SAA. That statute contained no provisions related to the nature of the production

process, and instead directed Commerce to determine whether circumvention

occurred based on the difference in value between exports to the U.S. and the cost of

the inputs purchased from the order country. PL 100–418, Aug. 23, 1988, 102 Stat

1107 at § 1321 (1988 Statute). Congress recognized that the "mechanical, quantitative

approach" of the 1988 Statute failed to address scenarios when minor assembly is

done in a third country, but the difference in value between the value of inputs and

the value of the eventual export is not small. SAA at 893. The enactment of 19

U.S.C. § 1677j(b)(2)(A)-(D) resolved the issue with the 1988 statute that the SAA identified. Accordingly, the shift away from a "mechanical, quantitative approach," as expressed by the SAA is not directed at the current 19 U.S.C. § 1677j(b)(2)(E), and thus, Commerce's methodology is consistent with congressional intent. Appx10617.

Canadian Solar lastly asserts that Commerce's finding that the value of processing performed in Thailand is small is inconsistent with prior determinations. Canadian Solar Br. at 54-56 (citing *Ferrovanadium and Nitrided Vanadium From the Russian Federation*, 77 Fed. Reg. 6,537, 6,539 (Dep't Commerce Feb. 8, 2012) (prelim. circumvention det.) (*Ferrovanadium from Russia Prelim*); *Certain Tissue Paper Products from the People's Republic of China*, 73 Fed. Reg. 21,580, 21,585-86 (Dep't Commerce Apr. 22, 2008) (prelim. circumvention det.) (*Tissue Paper from China*); and *Hot-Rolled Lead from Germany*, 64 Fed. Reg. at 40,340).

Commerce is not bound by these determinations because they pertain to industries distinct from the solar industry. *See Al Ghurair II*, 65 F.4th at 1360. But assuming for the sake of argument that Commerce was bound by any of these decisions, only *Ferrovanadium from Russia* arguably contradicts what Commerce did in this case. In *Tissue Paper from China*, Commerce found that the approximate value added in the third country was not small, but the value added there was *greater* than that which Commerce calculated for Canadian Solar. *See Tissue Paper from China*, 73 Fed. Reg. at 21,585. In *Hot-Rolled Lead from Germany*, Commerce did not clearly articulate whether a value added in the range of 10 to 29 percent was small, and in any

case based its overall negative circumvention determination on factors separate from the value added in the third country. *Hot-Rolled Lead from Germany*, 64 Fed. Reg. at 40,342. Only in *Ferrovanadium from Russia* did Commerce find that a value added lower than that which Commerce calculated for Canadian Solar was not small and, even there, it recognized that such a finding differed from other cases and was based on the high volatility of the price of ferrovanadium during the inquiry period. *Ferrovanadium from Russia*, 77 Fed. Reg. at 6,538-40; *see also* Appx10618 (distinguishing value added finding in this case from *Ferrovanadium from Russia*). Canadian Solar does not respond to any of Commerce's discussion for why *Ferrovanadium* is distinct from the circumvention scenario here.

### E. Appellants' Remaining Arguments Are Unavailing

Almost all of plaintiff-appellants' remaining arguments pertain to Commerce's prior determinations that the country of origin of a solar cell is based on the country in which the P/N junction is formed. Trina Br. at 34-38. Absent any authority, Trina maintains that, because Commerce has found that the formation of the P/N junction is determinative of the country of origin of subject merchandise under the *Solar Orders*, Commerce is precluded from including Thai-origin solar cells in the scope of the *Solar Orders. See* Trina Br. at 36. In contrast to Trina's bare contention, *Bell Supply* explains that "legislative history indicates that § 1677j can capture merchandise that is substantially transformed in third countries, which further implies that § 1677j and the substantial transformation analysis are not coextensive." *Bell Supply Co., LLC v. United*

*States*, 888 F.3d 1222, 1231 (Fed. Cir. 2018) (citing Conference Report accompanying the Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, 102 Stat. 1107 (1988); SAA at 893). Accordingly, as the CIT correctly concluded, inclusion of cells that are substantially transformed in Thailand but are nonetheless circumventing is entirely lawful.

Trina relies on *Wheatland Tube* but misapplies it. Trina Br. at 37-38. This Court held that capturing excluded merchandise in an order through a circumvention finding would "frustrate the purpose of the antidumping laws because it would allow Commerce to assess antidumping duties on products intentionally omitted from the ITC's injury investigation." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1371 (Fed. Cir. 1998).

However, here, Commerce found that solar cells for which a P/N junction formed in a third country are not within the scope the *Solar Orders* because they are not China-origin. Appx10565. But unlike *Wheatland*, the merchandise imported to the United States in this case is of the same class or kind as in-scope merchandise from China. The circumvention statute allows inclusion of merchandise from an inquiry country that "is of the same class or kind as any merchandise produced in" the order country. 19 U.S.C. § 1677j(b)(1). Put another way, when an intermediate input shipped from the order country to the inquiry country is already subject merchandise, the further processed merchandise shipped to the United States would have always been within the scope of the order country because no "substantial transformation"

had taken place. *Bell Supply*, 888 F.3d at 1229. In those cases, Commerce conducts scope proceedings. *Id.* In contrast, if out-of-scope merchandise from an order country is shipped to the inquiry country and substantially transformed into the same class or kind as subject merchandise, then Commerce may conduct a circumvention inquiry under 19 U.S.C. § 1677j(b) to determine whether to bring that further processed merchandise under the protection of an order. That is because "[c]ircumvention can only occur if the articles are from a country not covered by the relevant AD or CVD orders." *Bell Supply*, 888 F.3d at 1229. Reading the statute otherwise would "render [§ 1671j] moot." Appx10565.

## CONCLUSION

For these reasons, we respectfully request that the Court affirm the CIT's judgment.

Respectfully submitted,

BRETT A. SHUMATE
   *Assistant Attorney General*

PATRICIA M. McCARTHY
   *Director*

CLAUDIA BURKE
   *Deputy Director*

/s/ *Collin T. Mathias*
COLLIN T. MATHIAS
   *Trial Attorney*
   *Commercial Litigation Branch*
   *Civil Division*
   *U.S. Department of Justice*
   *P.O. Box 480, Ben Franklin Station*
   *Washington, DC 20044*
   *(202) 307-0315*
   *Collin.t.mathias@usdoj.gov*

February 27, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

_/s/ Collin T. Mathias_
Trial Attorney

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10157 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Collin T. Mathias*
Collin T. Mathias