NON-CONFIDENTIAL VERSION

25-1940

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD., CANADIAN SOLAR INTERNATIONAL LIMITED, CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD.**

*Plaintiffs-Appellants,*

**NEXTERA ENERGY CONSTRUCTORS, LLC,**

*Plaintiff,*

**v.**

**UNITED STATES,**

*Defendant-Appellee,*

**AUXIN SOLAR INC.,**

*Defendant.*

**Appeal from the United States Court of International Trade in Case Nos. 23-00222-MMB and 23-00227-MMB, Judge M. Miller Baker**

**REPLY BRIEF OF PLAINTIFF-APPELLANT
TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD.**

Jonathan M. Freed
MacKensie R. Sugama
**TRADE PACIFIC PLLC**
700 Pennsylvania Ave., SE, Suite 500
Washington, DC 20003
(202) 223-3760

Dated:  April 17, 2026                    *Counsel to Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 25-1940

**Short Case Caption** Trina Solar Sci. & Tech. (Thailand) Ltd. v. United States

**Filing Party/Entity** Trina Solar Science & Technology (Thailand) Ltd.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/17/2026

Signature: /s/ MacKensie R. Sugama

Name: MacKensie R. Sugama

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Trina Solar Science & Technology (Thailand) Ltd. | | Trina Solar Co., Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑   None/Not Applicable                ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable                ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 25-1940

**Short Case Caption:** Trina Solar Science & Technology (Thailand) Ltd. v. U.S.

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains ___5___ number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 04/17/2026

Signature: /s/ MacKensie R. Sugama

Name: MacKensie R. Sugama

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT ............................................................................................2

    I.      DEFENDANT-APPELLEE CANNOT JUSTIFY HOW
COMMERCE'S RELIANCE ON THE R&D FACTOR ALONE
WAS REASONABLE........................................................................2

         A.  Defendant-Appellee Ignores the Plain Language of the Statute ...........4

         B.  Defendant-Appellee Continues to Erroneously Consider Affiliation in
its "Minor or Insignificant" Analysis Under §1677j(b)(2) ...................6

         C.  Defendant-Appellee Cannot Support with Substantial Evidence
the Dispositive Weight Placed on the R&D Factor Alone..................10

    II.     DEFENDANT-APPELLEE FAILS TO JUSTIFY OR EXPLAIN
THE INCONSISTENCIES IN COMMERCE'S FINDINGS UNDER
THE "NATURE OF THE PRODUCTION PROCESS" FACTOR ...15

         A.     Defendant-Appellee Fails to Engage with Trina's Argument
on Commerce's Contradictory Findings under the "Nature of
the Production Process" Factor .......................................................15

         B.     Defendant-Appellee Fails to Explain How Commerce's
Circumvention Determination Complies with the Scope of
the *Solar I* Orders .........................................................................18

CONCLUSION.........................................................................................22

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**

*Al Ghurair Iron & Steel LLC v. United States*, 65 F.4ᵗʰ 1351 (Fed. Cir. 2023)..................................................................................................7, 10

*Arcelormittal Tubular Products v. United States*, Consol. Ct. No. 23-00248, 2025 WL 2643178 (Ct. Int'l Trade 2025) .........................................................4

*Coalition of Am. Flange Producers v. United States*, 517 F. Supp. 3d 1378 (Ct. Int'l Trade 2021)...........................................................................17

*Ceramark Technology, Inc. v. U.S.*, 11 F.Supp.3d 1317 (Ct. Int'l Trade 2014) ......................................................................................... 18, 21

*Deacero S.A. de C.V. v. United States*, 817 F.3d 1332 (Fed. Cir. 2016).................20

*Hlds (B) Steel Sdn Bhd v. United States*, Ct. No. 21-00638, 2024 WL 244937 (Ct. Int'l Trade 2024)..............................................................................8

*Koyo Seiko Co. v. United States*, 95 F.3d 1094 (Fed. Cir. 1996) .........................4, 5

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983).......................................................................................17

*SeAH Steel VINA Corporation v. United States*, __ F.Supp.3d __, Ct. No. 23-00256, 2025 WL 3645148 (Ct. Int'l Trade 2025) .................................................8

*Shelter Forest Int'l Acquisition, Inc. v. United States*, Consol. Ct. No. 23-00144, 2026 WL 413045 (Ct. Int'l Trade 2026) ............................................................9

*Smith Corona Corp. v. United States*, 915 F.2d 683 (Fed.Cir.1990) ......................19

*Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998)........... 20, 22

**Statutes**

19 U.S.C. § 1677j(b)(1) .......................................................... 6, 8, 15, 17

19 U.S.C. § 1677j(b)(2) .................................................................. *passim*

19 U.S.C. § 1677j(b)(3) ..................................................................... *passim*

**Administrative Determinations**

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention with Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419 (Aug. 23, 2023) .......................................................................1

**Other Authorities**

*Uruguay Round Agreements Act, Statement of Administrative Action*, H.R. Rep. No. 103-316 (1994) ................................................................ 3, 4, 8, 9, 14

# INTRODUCTION

Plaintiff-Appellant Trina Solar Science & Technology (Thailand) Ltd. ("Trina," "TTL," or "Plaintiff-Appellant"), a producer of crystalline silicon photovoltaic cells ("CSPV") and modules from Thailand, provides this reply to the arguments raised in the response brief of Defendant-Appellee, the United States. *See* Defendant-Appellee's Brief, Doc. No. 31 (Feb. 27, 2026) ("Gov't. Br."); *see also*, Principal Brief of Plaintiff-Appellant Trina Solar Science & Technology (Thailand) Ltd., Doc. No. 16 (Oct. 15, 2025) ("TTL Opening Brief"). Trina appeals the judgment in *Canadian Solar Int'l Ltd. et al. v. United States* and *Trina Solar Science & Tech. (Thailand) Ltd. v. United States*, Slip Op. 25-59, 788 F.Supp.3d 1262 (Ct. Int'l Trade May 16, 2025), Appx5–36 ("Slip Op. 25-59"), which affirmed aspects of Commerce's final affirmative circumvention determination in *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention with Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57419 (Aug. 23, 2023) ("*Final Determination*"), Appx10728–10742, and accompanying Issues and Decision Memorandum ("*Decision Memo*"), Appx10559–10727.

In its response brief, Defendant-Appellee fails to establish that Commerce's reliance on the R&D factor alone in reaching an affirmative finding of circumvention was supported by substantial evidence. Nor can it justify any reasonable basis for Commerce's incongruent finding that the overall process of assembly or completion was insignificant when the "nature of the production process" was significant.

In sum, Defendant-Appellee does not —or cannot —respond to the critical arguments raised in Plaintiff-Appellant's brief, ignores substantial portions of the administrative record that significantly undermine Commerce's determinations, and fails to establish that Commerce's decisions were based on substantial evidence. We address each of these issues in turn.

## ARGUMENT

### I. DEFENDANT-APPELLEE CANNOT JUSTIFY HOW COMMERCE'S RELIANCE ON THE R&D FACTOR ALONE WAS REASONABLE

In the underlying inquiry, Commerce made an unprecedented finding of affirmative circumvention as to Trina based on a single factor weighing in favor of the process of assembly or completion being minor or insignificant, *i.e.*, the factor related to the level of research and development ("R&D"). *Decision Memo*, at 66, Appx10624. That is, four out of the five statutory factors under 19 U.S.C. §1677j(b)(2) weighed *against* a finding of circumvention. This finding was

unprecedented because in no other prior circumvention inquiry had Commerce ever reached an affirmative determination based on a single "minor or insignificant" factor alone. *See* Letter from Trade Pacific PLLC, "TTL's Second Tranche Case Brief," (Apr. 26, 2023) at Attach. 1, Appx10462–10464 (providing a summary of Commerce's prior 18 circumvention proceedings). Further, Commerce reached this determination despite the Statement of Administrative Action ("SAA") explicitly directing that "no single factor will be controlling." *See Uruguay Round Agreements Act, Statement of Administrative Action*, H.R. Rep. No. 103-316 (1994), at 893 ("SAA").

In its response brief, Defendant-Appellee's attempts to justify Commerce's overreliance on the R&D factor fall short. In doing so, the government ignores the directive from the SAA that "no single factor will be controlling" and its reasons for weighing the R&D factor so heavily are unconvincing. First, Defendant-Appellee contends that elevating the R&D factor above all other factors was necessary because the other "minor or insignificant factors . . . fail to account for the relative ease with which the cell and module stages of the production process, even if technically complex, can be relocated to a third country." Gov't. Br., at 28. Defendant-Appellee further disputes the trial court's holding that Commerce committed a legal error by bleeding the §1677j(b)(2) "minor and insignificant" factors and §1677j(b)(3) "other" factors together into the same analysis. Gov't.

Br., at 25–30.  Finally, in ignoring the factual inconsistencies raised by Plaintiff-Appellant, Defendant-Appellee maintains that Commerce's dispositive weight placed on the R&D factor alone was supported by substantial evidence.  Gov't. Br., 24–28.

**A. Defendant-Appellee Ignores the Plain Language of the Statute**

Defendant-Appellee argues that R&D should be elevated over all other "minor or insignificant" factors because the other statutory factors "fail to account for the relative ease" of which production can be relocated.  Gov't. Br., at 28.  Specifically, Defendant-Appellee states that the remaining "§1677j(b)(2) minor or insignificant factors (level of investment, nature of the production process, extent of the production facilities, and value added in the third country) fail to account for circumventing behavior." *Id.*

As an initial matter, Congress specifically drafted the five statutory factors that Commerce "*shall* take into account" to weigh and balance.  *See* 19 U.S.C. §1677j(b)(2) ("the administering authority shall take into account"); *see also*, SAA, at 893 ("Commerce will evaluate *each* of these factors") (emphasis added).  The use of "shall" forecloses any discretion from Commerce to dismiss factors it deems to be inadequate.  *See Arcelormittal Tubular Products v. United States*, Consol. Ct. No. 23-00248, 2025 WL 2643178, at 4 (Ct. Int'l Trade 2025) (quoting *Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1101 (Fed. Cir. 1996) ("{w}here

4

the plain language of the statute compels agency action, that interpretation does not require or implicate the exercise of discretion.") (internal quotes omitted). Neither Commerce nor Defendant-Appellee has the authority to determine that the other four factors are inadequate for consideration, when the statute expressly directs otherwise.

Second, the government's theory that only the R&D factor captures circumventing activity over the other statutory factors is factually inaccurate. The other statutory factors do account for circumventing behavior and thoroughly capture "fungible activities," otherwise their placement within 19 U.S.C. §1677j(b)(2) renders them futile. Specifically, the "level of investment" factor accounts for circumventing behavior by examining whether a producer used minimal capital to shift production to a third country. The extent of production facilities accounts for circumvention by considering the relative size, scale, and scope of production activities in the third country. The factor for added value similarly captures circumventing behavior if only a negligible proportion of the product's finished value can be attributed to production in the third country. Finally, the nature of the production process factor involves an overarching inquiry into whether the product itself undergoes meaningful or complex processing in the third country. Taken together, these factors demonstrate that Defendant-Appellee's singular focus on R&D is not only unsupported by the statute, but

fundamentally misapprehends the comprehensive framework Congress designed to address circumvention.

Thus, Defendant's position that the other "minor and insignificant" statutory factors "fail to account" for circumventing behavior is factually and legally incorrect. Commerce is obligated by the statute to weigh and balance all "minor and insignificant" factors, which all account for circumventing behavior, consistent with Congressional intent. Accordingly, Defendant-Appellee's impermissible reading of the statute — one that relies on unfounded discretion— must be rejected.

### B. Defendant-Appellee Continues to Erroneously Consider Affiliation in its "Minor or Insignificant" Analysis under §1677j(b)(2)

In the underlying opinion, the trial court determined that Commerce erred by including within its "minor or insignificant" analysis under 19 U.S.C. §1677j(b)(2) consideration for producers' affiliation, which is expressly provided for under §1677j(b)(3):

> The statute required Commerce to undertake an "if/then" analysis. Only if it finds the conditions in § 1677j(b)(1)(A)–(E) satisfied does it then decide whether to expand an order to cover a third country. In doing so, it must then consider the § 1677j(b)(3) factors. By letting one of them—affiliation—bleed over into its weighing of the § 1677j(b)(2) elements that bear on § 1677j(b)(1)(C), the Department erred as a matter of law.

Slip Op. 25-59, at 16, Appx20.

Defendant-Appellee disagrees with the trial court's holding that it was a legal error to evaluate affiliation within its §1677j(b)(2) statutory analysis. Gov't. Br., at 31. Defendant-Appellee argues that affiliation under the separate provision of §1677j(b)(3) should be considered within §1677j(b)(2) because "nothing in the statute" plainly states that Commerce shall not consider these factors in conjunction with other steps in the circumvention analysis." *Id.*, at 32. Further, Defendant-Appellee cites *Al Ghurair II* to assert that this Court has previously analyzed §§1677j(b)(2) and (3) factors concurrently. *Id.* Finally, without citing to any controlling authority, Defendant-Appellee contends that the "particular circumvention scenario" here, which "centered on Chinese input suppliers and their parent companies using a fully-integrated supply chain" can be considered under §1677j(b)(2) "absent explicit congressional guidance otherwise." *Id.*

Defendant-Appellee's attempts to couple the statutory factors under §§1677j(b)(2) and (3) are unavailing. Moreover, the government ignores that explicit congressional guidance requires that the analyses under §§1677j(b)(2) and (3) be undertaken independently. The statutory framework is clear that a process must first be found to be minor or insignificant in order to include merchandise within the scope of an existing order. If the process of assembly or completion is found to be minor or insignificant, affiliation can then be considered to determine whether an affirmative finding of circumvention is appropriate, as required under

§1677j(b)(1)(E).  *See SeAH Steel VINA Corporation v. United States*, __ F.Supp.3d __, Ct. No. 23-00256, 2025 WL 3645148, at 9 (Ct. Int'l Trade 2025) (considering the §1677j(b)(3) factors when determining whether circumvention was appropriate under §1677j(b)(1)(E)); *see also Hlds (B) Steel Sdn Bhd v. United States*, Ct. No. 21-00638, 2024 WL 244937, at 1 (Ct. Int'l Trade 2024) ("{a}ssuming that those threshold requirements {§1677j(b)(1)(A) – (D)} are satisfied, the statute mandates that the Department consider certain additional factors before expanding the scope of a duty order,") (citing §1677j(b)(1)(E), §1677j(b)(3)).

This reading of the statute also aligns with Congressional intent as described in the SAA.  Therein, Congress describes the addition of the "minor or insignificant" factors under §1677j(b)(2).  The "minor or insignificant" factors directly tie to §1677j(b)(1)(C), which Congress described as the "so-called mandatory factors."  *Id.*, at 893.  Given the use of "and" under §1677j(b)(1), every factor must be met under this subsection for Commerce to find circumvention. Once these mandatory factors are all met, Commerce can then turn to considering the other factors under §1677j(b)(3).  In the SAA, Congress confirms this reading: "{b}efore deciding to include imported parts with the scope of an antidumping or countervailing duty order, Commerce will consider {the §1677j(b)(3) factors}." *See* SAA, at 894.  Accordingly, the framework of the statute expressly separates the §1677j(b)(3) factors from the "minor and insignificant" factors.

Here, Commerce impermissibly found that *because of* affiliation, the process of assembly and completion in Thailand is minor and insignificant. The trial court was correct to treat this as a legal error. The statutory framework does not permit Commerce to expand the scope of an order through a circumvention finding—as they did in the underlying inquiry—when a process of assembly or completion is not minor or insignificant.[1] The SAA confirms that Congress did not enact the circumvention provisions to result in such an outcome — "{b}ecause Commerce will find circumvention only where assembly or completion operations in the United States or in third countries are *minor*, the proposed amendments will not deter legitimate investment, characterized by the addition of substantial value." *Id.*, at 894 (emphasis added). Under Defendant-Appellee's proposed statutory reading, any manufacturer that has invested significant capital in production, for extensive production facilities, for an extensively and significantly complex production process, which adds significant value to the finished good, is at risk of circumventing an existing order if it is affiliated with input suppliers in the order

---

[1] In a recent decision from the CIT, the Court emphasized the importance of not overreaching in circumvention proceedings. *See Shelter Forest Int'l Acquisition, Inc. v. United States*, Consol. Ct. No. 23-00144, 2026 WL 413045, at 32 (Ct. Int'l Trade 2026) ("Moreover, the court is aware that after an AD or CVD order is imposed, issues of circumvention and evasion may arise such that the domestic industry, Commerce, and Customs become engaged in an exercise of "Whack-A-Mole." While that exercise is statutorily sanctioned, adherence to the requirements of the statute ensures that legitimate market-driven supply shifts not amounting to circumvention or evasion are not mistaken for a "mole.")

country.  This is simply not the intention or purpose of the circumvention statute, and such a reading of the statute must be rejected.

Further, Defendant wrongly relies on *Al Ghurair II* to assert that this Court has previously analyzed §§1677j(b)(2) and (3) factors concurrently.  *See Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351 (Fed. Cir. 2023).  Critically, in the underlying circumvention inquiry appealed in *Al Ghurair II*, Commerce found that *four* out of the five "minor or insignificant" statutory factors weighed *in favor* of circumvention.  *Id.*, at 1356–1357 (emphasis added).  *Al Ghurair II* does not support the government's contention that §§1677j(b)(2) and (3) should be read together concurrently.  Rather, in *Al Ghurair II*, this Court considered whether Commerce's methodology for analyzing the minor or insignificant factors under §1677j(b)(2), as well as its methodology pertaining to the "patterns of trade" under §1677j(b)(3), were supported by substantial evidence.  That is, Commerce's methodologies were reviewed in isolation, factor by factor, and the issue of Commerce's balancing of factors was never raised.  Accordingly, Defendant's reliance on *Al Ghurair II* to support its concurrent analysis of §§1677j(b)(2) and (3) is inapplicable here.

### C. Defendant-Appellee Cannot Support with Substantial Evidence the Dispositive Weight Placed on the R&D Factor Alone

The government asserts that the "circumvention scenario. . . in conjunction with the importance of the R&D to the solar industry, warrants Commerce's

particular emphasis on R&D here because the nature of R&D is such that, once carried out, it is easily transmissible across borders." Gov't. Br., at 27. Accordingly, Defendant-Appellee contends that the emphasis on R&D was warranted because of the (1) "particular circumvention scenario" and (2) the importance of the R&D in the solar industry. *Id.* The government describes the "circumvention scenario" as being "centered on Chinese input suppliers and their parent companies using a fully-integrated supply chain to circumvent the *Solar Orders*." Gov. Br., at 26. Yet, for the reasons explained above, Commerce erred by including affiliation within its analysis of the R&D factor, and the "if/then" construction of the statutory framework must be followed. Thus, Commerce's analysis of the "particular circumvention scenario" is based on legal error and cannot be sustained.

Defendant-Appellee's remaining reasons for placing dispositive weight on the R&D factor are similarly unsupported by substantial evidence. In its opening brief, Plaintiff-Appellant described the numerous internal inconsistences apparent in Commerce's findings on the "importance of R&D in the solar industry." *See* TTL Opening Brief, at 39–41. Namely, under the "nature of the production process" factor, Commerce found that the technical hurdles required for *cell* production were significant. *Decision Memo*, at 50, Appx10608. Yet, under the "level of R&D" factor, Commerce ignored the significant technical hurdles for cell

11

production, and it instead relied on the technical hurdles required for *wafer* as a basis to conclude that "R&D is most important to wafer production." *Id.*, at 66, Appx10624.

In response, Defendant-Appellee argues that "Commerce found that cell and module production are more versatile than wafer production and can be easily relocated to third countries." Gov't. Br., at 28. However, the government's assertion that "cell and module production are more versatile," therefore justifying the dispositive weight placed on R&D, cannot be reconciled with Commerce's finding that the CSPV cell production process is significantly complex, involving a "multi-step production process that requires more precise and sophisticated equipment at multiple stages," *Decision Memo*, at 52, Appx10610. Defendant fails to explain how a production process can be so significant and complex, while also being relatively more "versatile" than other stages of production. As a threshold matter, the finding of the relative versatility of cell production is contradicted by the record, as discussed below. Second, the relative versatility of a production stage is not a part of the statutory framework for determining whether a process is minor or insignificant. Versatility might be an element that relates to any of the five §1677j(b)(2) factors, but Commerce found that each of those factors, other than R&D, weighed in favor of finding that the process was *not* minor or insignificant.

The government's argument on the "versatility" of cell production collapses when considering Commerce's findings regarding the nature of the production process and the other three "minor and insignificant" factors — which were based on TTL's significant invested capital, extent of facilities, and value added when manufacturing CSPV cells and modules in Thailand. TTL invested significant capital, specifically, [ **AMOUNT** ], to open its facilities in Thailand.[2] TTL's factory spans [ # ] square meters and has [ # ] workers, which is significant when compared to its wafer production facility, which is [ # ] square meters, with only [ # ] workers. TTL Prelim. Analysis Memo, at 2–3, Appx8498–8499. Commerce also determined that TTL's value of processing in Thailand was significant compared to the total value of the finished CSPV product. *See id.*, at 3, Appx8499. Taken together, these findings demonstrate the considerable amount of investment and resources required to engage in CSPV cell and module production. Defendant-Appellee's characterization of such production as "versatile" cannot be reconciled with Commerce's own findings regarding the significant and complex nature of the production process, and therefore must be rejected.

---

[2] *See* Memorandum from Paola Aleman Ordaz and Jeffery Pedersen to The File, Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic from China – Circumvention Inquiry with Respect to Thailand, *Preliminary Analysis Memorandum for Trina Solar Science & Technology (Thailand) Ltd*, Case Nos. a-570-979/c-570-980 (Circumvention Inquiry Thailand 2022) (Dec. 1, 2022) "(TTL Prelim. Analysis Memo"), at 2, Appx8498.

Lastly, Defendant-Appellee asserts that "it is the fungible nature of R&D that enables circumventing behavior." Gov't. Br., at 28. This contention, however, ignores the arguments raised by Trina on the practical realities of how R&D activities are conducted. As explained in Plaintiff-Appellant's brief, R&D activities—such as testing, trial runs, and product development—typically are only performed once and in one location for efficiency and cost-effectiveness. TTL Opening Brief, at 44. Thus, it is not unusual, nor indicative of circumventing behavior, for R&D expenses to be incurred in a single country. Yet, under Defendant-Appellee's theory, any producer whose R&D activities are centralized to a single location would be at risk of an affirmative circumvention finding, because the results of such R&D activities are "fungible." Such an outcome is overbroad, unreasonable, and unsupported by the statutory intention that "no single factor will be controlling." *See* SAA, at 893.

In summary, Defendant-Appellee fails to justify how the R&D factor alone can support Commerce's affirmative finding of circumvention. Even if this Court were to find it permissible to accord determinative weight to a single factor under §1677j(b)(2), substantial evidence does not support Commerce's decision to place all its weight on the R&D factor. Finally, Defendant-Appellee's attempts to assert that the "particular circumvention scenario" warranted an affirmative finding of circumvention are unavailing when the statutory framework directs that affiliation

14

serve as a general consideration for expanding the scope, not as a factor to consider when determining whether a process is minor or insignificant.

## II. DEFENDANT-APPELLEE FAILS TO JUSTIFY OR EXPLAIN THE INCONSISTENCIES IN COMMERCE'S FINDINGS UNDER THE "NATURE OF THE PRODUCTION PROCESS" FACTOR

In its circumvention determination, Commerce made comprehensive, detailed findings under the "nature of the production process" factor, §1677j(b)(2)(C).  Yet, Commerce declined to afford those findings any meaningful weight in its related overall determination that the process of assembly or completion was minor or insignificant under §1677j(b)(1)(C).  Neither Commerce nor Defendant-Appellee has offered any justification for disregarding the comprehensive nature of the findings under the "nature of the production process" factor, rendering Commerce's overall determination unsupported by substantial evidence.  Second, Defendant-Appellee fails to explain the inherent inconsistency central to Commerce's affirmative circumvention finding—that its overall conclusion on the process of assembly of completion under §1677j(b)(1)(C) contradicts its determination regarding the significance of cell production when defining the scope in the original investigation of the *Solar I* Orders.

### A. Defendant-Appellee Fails to Engage With Trina's Argument on Commerce's Contradictory Findings Under the "Nature of the Production Process" Factor

As detailed in Trina's opening brief, Commerce's findings under the "nature of the production process" factor pursuant to §1677j(b)(2)(C) were forceful and encompassing—applying to all mandatory respondents from all four countries—and incorporated detailed findings on the other minor and insignificant factors. In response, Defendant-Appellee wrongly asserts that "{i}n Trina's view, it should be impossible for Commerce to determine a process is minor or insignificant unless Commerce finds that the nature of the production process is insignificant." Gov't. Br., at 23. Defendant-Appellee mischaracterizes Trina's argument. Theoretically, it is possible for Commerce to determine that an overall process of assembly or completion is insignificant, even when it determines that the nature of the production is significant, but not when the findings regarding the nature of the production process are forceful and strike at the center of whether the process is minor or insignificant.

Commerce's analysis on the nature of the production process included broad, detailed, and comprehensive findings on the overall process of assembly or completion. That is, within its analysis of the "nature of the production process" factor, Commerce made findings that cell production, among many other requirements, requires "high-technological machinery" and "accurate quality-testing equipment" (R&D); an "expensive, multi-stage assembly line" (extent of production facilities); a sophisticated labor forced "requiring skilled technicians

16

and employees with advanced degrees (value added); and comparatively serves as "the most capital intensive part of the manufacturing process," (level of investment). *Decision Memo*, at 49–53, Appx10607–10611. All such findings speak to the technologically sophisticated and complex nature CSPV cell production. *Id.*

Neither Commerce nor Defendant-Appellee has been able to justify why the comprehensive, detailed findings under the "nature of the production process" factor should be afforded little weight in Commerce's overall finding on the significance of the process of assembly or completion under §1677j(b)(1)(C). Commerce's contradictory conclusion that the overall process of cell and module production was minor and insignificant cannot be sustained as supported by substantial evidence because there is no "rational connection between the facts accepted and the determination made." *Coalition of Am. Flange Producers v. United States*, 517 F. Supp. 3d 1378, 1381 (Ct. Int'l Trade 2021) (citing *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Commerce's encompassing findings within a single factor—addressing the significant level of investment, R&D, extent of production facilities, and value added—reveals the amount of substantial weight this factor should have been accorded. Commerce's ultimate conclusion that the process of CSPV cell assembly and completion in Thailand was minor and insignificant, despite these

detailed findings, plainly cannot be supported by substantial evidence.

Commerce's pervasive disregard of its own detailed factual findings — findings

that, on their face, support the conclusion that CSPV cell production is a complex

and significant process — therefore cannot be sustained. *See Motor Vehicle Mfrs.*

*Ass'n*, 463 U.S. at 43, 52 (establishing that a determination must be based on

"consideration of the relevant factors" and "offer a rational connection between the

facts found and the choice made" (internal quotation marks omitted).

**B. Defendant-Appellee Fails to Explain how Commerce's Circumvention Determination Complies with the Scope of the *Solar I* Orders**

In response to Trina's argument that the original scope of the *Solar I* orders

excluded solar cells from third countries, Defendant-Appellee asserts that the

circumvention statute provides broad authority for Commerce to include out-of-

scope inputs within the scope of an order. Gov't. Br., at 41. Yet, Defendant-

Appellee, and Commerce, fail to recognize that Commerce's affirmative

circumvention finding—based on a determination that production of CSPV cells in

Thailand is minor and insignificant—is incongruent with its original scope

determinations that third-country CSPV cells be excluded from the Orders.

Commerce's determination reinterprets the scope of the *Solar I* Orders "in a way

contrary to its terms," that cannot be upheld. *See Ceramark Technology, Inc. v.*

*United States*, 11 F.Supp.3d at 1317, 1322 (Ct. Int'l Trade 2014) (quoting *Smith Corona Corp. v. United States*, 915 F.2d 683, 686 (Fed. Circ. 1990)).

The scope of the *Solar I* Orders state that:

> Modules, laminates, and panels produced in a third-country from cells produced in China are covered by this *Order*; however, modules, laminates, and panels produced in China from cells produced in a third-country are not covered by this *Order*.

*Decision Memo*, at 5, Appx10563.

Importantly here, Commerce issued this scope after having specifically considered the possibility of circumvention in its original scope determination in the investigation:

> {T}he factors we consider for making country-of-origin determinations inherently reflect the agency's concern that the relief afforded by AD/CVD orders not be eviscerated by moving minor processing outside of the country covered by the order. Thus, circumvention concerns are reflected in the country-of-origin determination.

*See* Letter from Akin Gump Strauss Hauer & Feld LLP, "NextEra Comments on Auxin's Circumvention Ruling Request," (May 2, 2022), at Attach. 13 (citing Commerce Memorandum, "*Scope Clarification: Antidumping and Countervailing Duty Investigations of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*," (Mar. 19, 2012) ("*Scope Clarification Memo*"), at 9, Appx2595.

Commerce therefore decided the question of whether cell production was minor processing in the original investigation and expressly excluded third-country solar cells from the scope of the investigation. *Id.*, at 10, Appx2596. Commerce also instructed the *Solar I* petitioner that wholly separate AD/CVD petitions would need to be filed to "address any dumping concerns it has regarding solar modules/panels assembled from solar cells produced in a third country." *Id*. at 9, Appx2595.

In *Wheatland Tube*, this Court held that Commerce correctly declined to initiate a minor alterations circumvention inquiry on merchandise when such products were expressly excluded from the original scope of the Order. *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1371 (Fed. Cir. 1998). This Court found that circumvention cannot be subsequently sought for merchandise expressly excluded from the original scope of the order because "it would allow Commerce to assess antidumping duties on products intentionally omitted from the ITC's injury investigation." *Id.* Moreover, the explicit exclusions defined in the scope "were well known when the order was issued, and amounted to more than insignificant alterations to an existing product." *Deacero S.A. de C.V. v. United States*, 817 F.3d 1332, at 1338 (Fed. Cir. 2016) (citing to *Wheatland Tube*, 161 F.3d at 1356) (internal quotes omitted). Relatedly, the CIT similarly declined to sustain a minor alterations circumvention inquiry by Commerce where it had

"either ignored or dismissed record evidence that, on its face, indicates that the alteration at issue. . . is neither *minor* nor an alteration." *See Ceramark Tech.*, 11 F.Supp.3d at 1324 (emphasis added).

These line of cases addressing circumvention under the minor alterations provision of §1677j(c) present many parallels to Commerce's underlying inquiry that apply equally here. First, these cases confirm that although circumvention serves as a means for Commerce to expand the scope of an existing order, such expansion cannot contradict the express language of such order or relitigate issues decided in the original investigation when the scope was established.

Here, Commerce itself reaffirmed in this circumvention inquiry that the CSPV cell production process is not minor with its forceful findings regarding the nature of the production process. *Decision Memo*, at 49–51, Appx10607–10610. Having made that determination with regard to the scope in the original investigation and having reaffirmed that same factual determination regarding the nature of cell production in this inquiry, Commerce cannot now reach a contrary conclusion without impermissibly and retroactively rewriting the scope of the *Solar I* Orders. By doing so, Commerce is including merchandise—CSPV cells made in third countries—that it expressly excluded from the scope in the investigation, thereby allowing Commerce to impose antidumping duties on

21

producers prior to any ITC injury determination. *Wheatland Tube*, 161 F.3d at 1371.

Defendant-Appellee's reliance on broad circumvention authority to bring out-of-scope inputs within the scope of the *Solar I* Orders is foreclosed by controlling precedent applicable here when it contradicts the Order's explicit scope language. Having concluded that cell production is the pivotal step defining the scope in the original investigation, and having reconfirmed those findings in its nature of processing determination in the underlying inquiry, Commerce cannot reasonably conclude that cell production is "minor or insignificant."

## CONCLUSION

For these reasons, Plaintiff-Appellant respectfully requests that this Court reverse the CIT's judgment, find Commerce's affirmative *Final Determination* of circumvention as to Trina to be unsupported by substantial evidence and not in accordance with the law, and remand for reconsideration consistent with the Court's opinion.

Respectfully submitted,

/s/ Jonathan M. Freed
Jonathan M. Freed
/s/ MacKensie R. Sugama
MacKensie R. Sugama

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE

22

Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated:  April 17, 2026

*Counsel to Plaintiff-Appellant Trina Solar Science & Technology*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 25-1940

**Short Case Caption:** Trina Solar Science & Technology (Thailand) Ltd. v. U.S.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 4,710 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 04/17/2026

Signature: /s/ MacKensie R. Sugama

Name: MacKensie R. Sugama

Save for Filing