IN THE
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD., CANADIAN SOLAR INTERNATIONAL LIMITED, CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD.,**
*Plaintiffs-Appellants*,

**NEXTERA ENERGY CONSTRUCTORS, LLC,**
*Plaintiff*

v.

**UNITED STATES,**
*Defendants-Appellees*,

**AUXIN SOLAR INC.**
*Defendant*.

Appeals from the United States Court of International Trade in
Case Nos. 1:23-CV-00227-MMB, 1:23-cv-00222-MMB, Judge M. Miller Baker

**PUBLIC REPLY BRIEF FOR PLAINTIFFS-APPELLANTS CANADIAN SOLAR INTERNATIONAL LIMITED AND CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD.**

Jonathan T. Stoel
Michael G. Jacobson
Nicholas R. Sparks

HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel.: (202) 637-5600

*Counsel for Plaintiffs-Appellants Canadian Solar International Limited and Canadian Solar Manufacturing (Thailand) Co., Ltd.*

April 17, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2025-1940, 2025-1941

**Short Case Caption** Trina Solar Science & Technology (Thailand) Ltd. v. US

**Filing Party/Entity** Canadian Solar International Limited; Canadian Solar Manufacturing (Thailand) Co., Ltd.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 4/17/2026

Signature: /s/ Jonathan T. Stoel

Name: Jonathan T. Stoel

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Canadian Solar International Limited | | CSI Solar Co., Ltd.; Canadian Solar Inc. |
| Canadian Solar Manufacturing (Thailand) Co., Ltd. | | CSI Solar Co., Ltd.; Canadian Solar Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Gregory M.A. Hawkins (Hogan Lovells US LLP) | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

I, Nicholas R. Sparks, have entered an appearance as counsel to Canadian Solar International Limited and Canadian Solar Manufacturing (Thailand) Co., Ltd. in this proceeding and certify that I have authority to file this document.
/s/ Nicholas R. Sparks
Nicholas R. Sparks
4/17/2026

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................1

ARGUMENT ......................................................................................................5

I.      THE GOVERNMENT'S ATTEMPT TO BOX THE MEANING OF THE TERMS "ASSEMBLY AND COMPLETION" AND "MINOR OR INSIGNIFICANT" INTO FIVE SUBFACTORS FAILS.............................5

      A.      *Loper Bright* Applies—this Court Must Ascertain the Meaning of "Assembly or Completion" and "Minor or Insignificant"....................7

      B.      The Statute Does Not Allow Commerce to Assign Determinative Weight to the R&D Factor ................................................................14

II.     SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE GOVERNMENT'S ARGUMENTS REGARDING R&D ..........................20

III.    THE GOVERNMENT FAILS TO SHOW THAT THE VALUE OF PROCESSING PERFORMED IN THAILAND CONSTITUTES A "SMALL PROPORTION" ........................................................................26

CONCLUSION ...................................................................................................32

## CONFIDENTIAL MATERIAL

The confidential material omitted in pages 2, 19, 22, and 31 consists of business proprietary information submitted to the U.S. Department of Commerce under administrative protective order, **Appx1-4,** the disclosure of which is protected by statute, 19 U.S.C. § 1677f.

i

# TABLE OF AUTHORITIES

**CASES**

*Al Ghurair Iron & Steel LLC v. United States,*
  65 F.4th 1351 (Fed. Cir. 2023) ........................................................................15

*Archroma U.S., Inc. v. United States Dep't of Com.,*
  703 F. Supp. 3d 1396 (Ct. Int'l Trade 2024) ......................................................9

*Burlington Truck Lines, Inc. v. United States,*
  371 U.S. 156 (1962) ...........................................................................................21

*Carbon & Graphite Co. v. United States,*
  37 C.I.T. 1295 (2013) .........................................................................................28

*Citrosuco Paulista, S.A. v. United States,*
  704 F. Supp. 1075 (Ct. Int'l Trade 1988) ..........................................................16

*Consol. Edison Co. v. N.L.R.B.,*
  305 U.S. 197 (1938) ...........................................................................................26

*Dongbu Steel Co. v. United States,*
  635 F.3d 1363 (Fed. Cir. 2011) .........................................................................16

*Hlds (B) Steel Sdn Bhd v. United States,*
  No. 21-00638, 2024 WL 244937 (Ct. Int'l Trade Jan. 23, 2024)........................12

*Huvis Corp. v. United States,*
  570 F.3d 1347 (Fed. Cir. 2009) .........................................................................16

*Hyundai Steel Co v. United States,*
  19 F.4th 1346 (Fed. Cir. 2021) ..........................................................................17

*Loper Bright Enters. v. Raimondo,*
  603 U.S. 369 (2024).............................................................. 4, 6, 7, 10

*Marbury v. Madison,*
  1 Cranch 137 (U.S. 1803) .....................................................................................6

*Mosaic Co. v. United States,*
  160 F. 4th 1340 (Fed. Cir. 2025) ................................................. 8, 9, 15

*N.L.R.B. v. Columbian Enameling & Stamping Co.,*
  306 U.S. 292 (1939)...........................................................................................20

*Pesquera Mares Australes Ltda. v. United States,*
  266 F.3d 1372 (Fed. Cir. 2001) .........................................................................11

*Transpacific Steel LLC v. United States*,
4 F.4th 1306 (Fed. Cir. 2021) ....................................................................9

*Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB*,
975 F.2d 807 (Fed. Cir. 1992).................................................................14

*Universal Camera Corp. v. N.L.R.B.*,
340 U.S. 474 (1951)..................................................................................20

*Universal Camera Corp. v. N.L.R.B.*,
71 S. Ct. 456 (1951).................................................................................26

*Wolfe v. McDonough*,
28 F.4th 1348 (Fed. Cir. 2022) ................................................................10

**STATUTES**

19 U.S.C. § 1677j(b) ............................................................... *passim*

**ADMINISTRATIVE MATERIALS**

*Aluminum Wire and Cable From the People's Republic of China: Final Negative
Scope Ruling With Respect to the Kingdom of Cambodia; Final Negative
Determination of Circumvention With Respect to the Kingdom of Cambodia*,
89 Fed. Reg. 104,085 (Dep't Commerce Dec. 20, 2024) ....................................25

*Antidumping Duty Order on Hydrofluorocarbon Blends From the People's
Republic of China: Final Negative Determination of Circumvention With
Respect to R– 410B From Mexico*,
89 Fed. Reg. 88,970 (Dep't Commerce Nov. 12, 2024)....................................25

*Preliminary Negative Determination and Extension of Time Limit for Final
Determination of Circumvention of the Antidumping Duty Order on
Ferrovanadium and Nitrided Vanadium From the Russian Federation*,
77 Fed. Reg. 6,537 (Feb. 8, 2012) ..................................................................29

*Stainless Steel Wire Rod From the Republic of Korea: Final Negative
Determination of Circumvention of the Antidumping Duty Order*,
88 Fed. Reg. 34,128 (Dep't Commerce May 26, 2023) ....................................25

LEGISLATIVE MATERIALS

Statement of Administrative Action Accompanying the Uruguay Rounds
Agreement Act,
1994 U.S.C.C.A.N. 4040 .......................................................................... *passim*

OTHER AUTHORITIES

*Assembly,* Cambridge Dictionary,
https://dictionary.cambridge.org/us/dictionary/ english/assembly (last visited
Apr. 17, 2026) ...................................................................................11

*Assembly*, Merriam-Webster Dictionary,
https://www.merriam-webster.com/dictionary/assembly
(last visited Apr. 17, 2026) ...................................................................................11

*Completion*, Cambridge Dictionary,
https://dictionary.cambridge.org/us/dictionary/ english/completion (last visited
Apr. 17, 2026) ...................................................................................11

*Completion*, Merriam-Webster Dictionary,
https://www.merriam-webster.com/ dictionary/completion
(last visited Apr. 17, 2026) ...................................................................................11

IN THE

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

**TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD., CANADIAN SOLAR INTERNATIONAL LIMITED, CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD.,**
*Plaintiffs-Appellants*,

**NEXTERA ENERGY CONSTRUCTORS, LLC,**
*Plaintiff*

v.

**UNITED STATES,**
*Defendants-Appellees*,

**AUXIN SOLAR INC.**
*Defendant*.

---

Appeals from the United States Court of International Trade in
Case Nos. 1:23-CV-00227-MMB, 1:23-CV-00222-MMB, Judge M. Miller Baker

---

**REPLY BRIEF FOR PLAINTIFFS-APPELLANTS CANADIAN SOLAR INTERNATIONAL LIMITED AND CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD.**

---

## INTRODUCTION

Plaintiffs-Appellants Canadian Solar International Limited ("CSIL") and Canadian Solar Manufacturing (Thailand) Co., Ltd. ("THSM") (collectively, "Canadian Solar") have shown that the U.S. Department of Commerce's ("Commerce" or the "Department") finding of circumvention is not in accordance with law or supported by substantial evidence. Through hundreds of millions of dollars in investment, Canadian Solar built massive crystalline silicon photovoltaic

("CSPV") cell and module manufacturing operations in Thailand to transform inert polysilicon wafers into complex technology products that turn sunlight into electricity. These massive Thai operations do not comprise the "minor or insignificant" processing encompassed by the plain text of the circumvention statute. Commerce's unlawful and factually erroneous findings should be reversed and remanded for further consideration.

The undisputed facts on the record reflect the following:

1. Canadian Solar invested almost a **[ # ]** U.S. dollars in Thailand prior to the circumvention inquiry: approximately $**[ # ]** million in a cell manufacturing facility, and an additional $**[ # ]** million in a module manufacturing facility. Appx7049, Appx10482-10483.

   In fact, under Commerce's methodology, Canadian Solar's level of investment in Thailand was **[ adjective ]** than its comparable investments in China—$**[ # ]** million to construct Thai cell and module manufacturing versus $**[ # ]** million to construct affiliated wafer production in China. Appx8506.

2. According to Commerce, the "essence" of the final product was "realized" in Thailand, not China. Appx8477.

3. Canadian Solar employed **[ # ]** the number of workers in Thailand than relevant Chinese affiliates. By square meters, the footprint of the Thailand production facilities was **[ # ]** percent of the area of relevant production facilities of affiliates in China. Appx8507.

4. At least **[ # ]** percent of the finished solar modules' value originates in Thailand. Appx10745.

5. From 2019 through 2021, Canadian Solar invested at least $**[ # ]** million in research and development ("R&D") projects in Thailand. Appx8506.

Commerce made an affirmative finding of circumvention notwithstanding the overwhelming record evidence in Canadian Solar's favor. This amounts to legal error by Commerce and a failure to support its findings with substantial evidence. In defending Commerce's analysis, the Government's brief incorrectly reads the circumvention statute, wrongly restricts the Court's role in interpreting it, and underscores that Commerce acted without substantial evidence by unduly minimizing Canadian Solar's Thai manufacturing operations.

From its first page, the Defendant's brief charts incorrect factual predicates. It contends: "Commerce conducted a circumvention inquiry on solar cells from China for which exporters and producers *claimed Thai origin*." Def. Br. 1 (emphasis added). But, Commerce never found that Canadian Solar's Thai cells are not of Thai origin. Rather, in its unlawful circumvention determinations, Commerce decided that the scope of its antidumping and countervailing ("AD/CVD") duty orders on solar cells and modules from China should be upended to also encompass Thai cells with Chinese wafers, even if their Thai country of origin remained unchanged. Appx10629-10630.

The Government then reports that Commerce found "the Chinese orders were being circumvented by *solar cells further processed in Thailand* and subsequently exported to the United States." Def. Br. 1. But, this case does not involve *any* solar cells manufactured in China. The cells at issue were not "further processed" in

3

Thailand—rather, they were born there, through operations rendering inert wafers into solar cells, a fact verified by Commerce officials on the ground in Thailand. Appx10367-10368 (observing wafers being transformed into cells in Thailand); Appx10665-10666.

Errors in the Defendant's legal analysis then follow. Critically, the Government's brief insists that the governing statute authorizes Commerce to "emphasize" R&D as a "special," "preeminent" factor in its analysis, notwithstanding Congress's directive that "no single factor will be controlling." Compare Def. Br. 10 (describing a "special emphasis on the level of R&D"), 13, 16, *with* Statement of Administrative Action Accompanying the Uruguay Rounds Agreement Act, 1994 U.S.C.C.A.N. 4040 ("SAA") at 4216 (providing Congress's directive). This "special emphasis" by Commerce is contrary to the statute. If the R&D prong alone could dictate a circumvention determination as Commerce contends, then any manufactured product with moderate R&D in the country of manufacture could feasibly be considered circumventing an AD/CVD order with respect to a separate country. This is wrong. Congress instead directed Commerce's circumvention findings to root out a "***process of assembly or completion*** in the foreign country {that is} is minor or insignificant," which may have little to do with the situs of the R&D required to manufacture the product. 19 U.S.C. § 1677j(b)(1)(c)(emphasis added). Consistent with the direction of *Loper Bright*

4

*Enters. v. Raimondo*, 603 U.S. 369 (2024), this Court should independently assess the meaning of the statutory terms "assembly or completion" and "minor or insignificant" and recognize that Canadian Solar's extensive Thai operations are much greater than the "screwdriver assembly operations" targeted by the circumvention statute. SAA at 4216.

The Court should also recognize that substantial evidence does not support Commerce's findings with respect to the preeminence of R&D—a fact made particularly clear by the Government's reliance on a $58 million dollar R&D figure that is dwarfed by Canadian Solar's ***75-times greater*** cost of revenues that same year. Appx6295. The Government's brief additionally fails to show that Canadian Solar's contribution of one third of value in Thailand, coupled with the transformative processes undertaken there creating the "essence" of the finished goods, constitutes a "small proportion" of the products' value. Nor could it. Commerce's decision was unsupported by substantial evidence and not made in accordance with law.

## ARGUMENT

## I. THE GOVERNMENT'S ATTEMPT TO BOX THE MEANING OF THE TERMS "ASSEMBLY AND COMPLETION" AND "MINOR OR INSIGNIFICANT" INTO FIVE SUBFACTORS FAILS

The governing statute, 19 U.S.C. § 1677j(b), limits Commerce's circumvention findings to circumstances where "the process of assembly or

completion in the foreign country . . . is minor or insignificant." The Government's brief erroneously asserts that this Court should not "independently interpret" the meaning of the statutory terms "minor" and "insignificant" because Section 1677j(b)(2) provides the agency with five factors that it "shall take into account." Def. Br. 19-20. The Government is asserting more deference than Commerce is due. Commerce is tasked with the administration of the circumvention statute, but the agency may not ignore the plain language and structure of the statute, including as guided by the legislative history and the ordinary definitions of key terms. This is particularly clear following the Supreme Court's recently repeated directive that "{i}t is emphatically the province and duty of the judicial department to say what the law is," irrespective of the agency's opinion. *Loper Bright* 603 U.S. at 385 (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (U.S. 1803)).

Here, Commerce erred by ignoring the plain meaning of the terms "process of assembly or completion" and "minor or insignificant." Moreover, legislative history and the statutory text make clear that no single one of the five "minor or insignificant" factors may control, especially the factor least connected to "the process of assembly or completion"—R&D. As such, Commerce's application of the "minor or insignificant" analysis in this inquiry was unlawful because the agency focused narrowly on the five subfactors and ignored the overarching statutory language and structure that guides the weights and meanings of those subfactors.

**A.** ***Loper Bright* Applies—this Court Must Ascertain the Meaning of "Assembly or Completion" and "Minor or Insignificant"**

Defendant contends that this Court has no role in determining the meaning of the 19 U.S.C. § 1677j(b)(1)(c) terms "process of assembly or completion" or "minor or insignificant." Indeed, the Government insists that the U.S. Supreme Court's decision in *Loper Bright*—which establishes that Commerce's interpretation of the statutory text is not entitled to deference by this Court—is inapplicable simply because Commerce has "significant discretion to investigate circumvention." Def. Br. 15. This is not so.

Commerce does not have unbounded discretion to make findings that contravene the plain text of Section 1677j(b)(1)(c), as informed by the accompanying Congressional instructions. *Loper Bright* 603 U.S. at 373 ("It therefore makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best."). Notwithstanding this Supreme Court instruction, the Defendant contends that the phrase "minor or insignificant" requires no statutory interpretation at all. Def. Br. 19 (contending that the trial court did not err by "not interpreting the phrase" and instead "focusing instead narrowly on the five subfactors") (citation omitted). This Court should not accede to this claim of unbridled executive authority and instead must interpret the best meaning of the law employing the standard tools of statutory construction.

The Government claims support for its assertion that the phrase "minor or insignificant" does not require judicial statutory interpretation in this Court's recent decision in *Mosaic Co. v. United States*. Def. Br. 19 ("Congress frequently provides Commerce 'reasonable flexibility in assessing' statutory terms."). However, the Government omits a key caveat—and analytical step—that this Court emphasized in that holding: the agency's "flexibility is not unbounded{.}" Rather, it is the judiciary that is the final arbiter of the meaning of a statute. *Mosaic Co. v. United States*, 160 F.4th 1340, 1348 (Fed. Cir. 2025).

In *Mosaic*, this Court considered whether Commerce properly found a subsidy to be specific, and thus actionable, in a CVD investigation. This Court explained that although the statute permitted Commerce "to exercise reasonable flexibility," the statute did not "provide Commerce with ***a loophole for rendering all subsidies de facto specific***. Rather, Commerce must engage in reasoned decision making." *Id.* (emphasis added). The Court articulated this conclusion after independently considering, without deference to the agency's interpretation, "the plain language of the statute" and its "legislative purpose" to arrive at its own "understanding of the statute." *Id.* at 1347.

Here, the Government's reading of Section 1677j(b)(2)'s five factors is anything but reasonable. Its interpretation directly contravenes the meaning of Section 1677j(b)(1)(c). Thus, the Government's brief proposes the very "loophole"

that *Mosaic* proscribes. *Id*. at 1348. That is, Commerce's overly broad reading of the statute would permit the agency to select *any* of the five factors, elevate that factor as being "preeminent" or "special" without any grounding in the specific circumstances of the underlying investigation, and find all third-country activities to be "circumventing."

Contrary to the Government's assertions, Commerce must consider each of the five factors within the context of the primary statutory question—whether the process of "***assembly or completion***" in the foreign country is "minor or insignificant." This Court has explained that, in considering the "relevant statutory context," the whole-text canon "calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." *Transpacific Steel LLC v. United States*, 4 F.4th 1306, 1322 (Fed. Cir. 2021) (citation omitted); *see Archroma U.S., Inc. v. United States Dep't of Com.*, 703 F. Supp. 3d 1396, 1402 (Ct. Int'l Trade 2024) (explaining that the whole-text canon requires that "the meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view.") (quotation omitted).

Ascertaining the meaning of "assembly or completion" and "minor or insignificant" is not only necessary to follow the whole-text canon but also to effectuate Congress's instructions faithfully. Congress specifically tasked

Commerce with answering one question—whether "the process of assembly or completion" in the foreign country is "minor or insignificant." Therefore, the terms "assembly or completion" and "minor or insignificant" must have meaning distinct from the five factors alone. If they do not, Congress would not have included those words in the statute. *See Wolfe v. McDonough*, 28 F.4th 1348 (Fed. Cir. 2022) (the presumption against surplusage provides that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative, superfluous, void or insignificant") (quotation omitted). Commerce must evaluate the five factors in answering that question and, in so doing, must evaluate them in a manner faithful to the specific inquiry that Congress assigned.

More simply put, if a baker wanted to make shortbread cookies and told his assistant to go buy flour, sugar, and butter, his assistant could not then go buy flour, sugar, and butter and make pie crust. The ingredients would be the same, but the overarching purpose is what matters most. The ingredients must be used to make shortbread cookies, not pie crust. The same logic applies here. Commerce may not use the five factors any way it chooses—the agency must use the five factors to determine whether the process of "***assembly or completion***" in the foreign country is "minor or insignificant."

This Court must use "all relevant interpretive tools" to interpret this statutory text, *Loper Bright*, 603 U.S. at 373, including by considering the statutory context

and legislative history, and consulting dictionaries. *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1382 (Fed. Cir. 2001) ("In order to ascertain the 'established meaning' of a term . . . , it is appropriate to consult dictionaries.") (citation omitted). Here, "minor" and "insignificant" have well-accepted meanings that the Government has failed to rebut. Canadian Solar Principal Br. 26-27 ("minor" and "insignificant" represent small quantities that are not important, not thought to be valuable, or something that is trivial or of little effect).

Moreover, in its brief, the Government elides entirely over the meanings of "assembly" and "completion." Both terms have clear meanings. "Assembly" means "the fitting together of manufactured parts into a complete, machine, structure, or unit of a machine," "a collection of parts so assembled," *Assembly*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/assembly (last visited Apr. 17, 2026), and "the process of putting together the parts of a machine or structure." *Assembly,* Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/assembly (last visited Apr. 17, 2026). "Completion" means "the act or process of completing" (which in turn means to be "brought to an end"), *Completion*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/completion (last visited Apr. 17, 2026), and "the act of finishing something that you are doing or making." *Completion*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/completion (last visited

11

Apr. 17, 2026). Taken together, Congress has clearly assigned Commerce with evaluating whether a process of bringing together the parts of a structure has occurred. *See Hlds (B) Steel Sdn Bhd v. United States*, No. 21-00638, 2024 WL 244937, at *4 (Ct. Int'l Trade Jan. 23, 2024) (recognizing that "completion or assembly" is synonymous with "manufacturing" or "production process."). Consequently, the totality of the five-factor inquiry, including the relative weight that is afforded to each factor, must serve Congress's precise, overarching purpose.

These definitions are entirely consistent with Congress's stated purpose in codifying the circumvention authority. SAA at 4217 (explaining that the circumvention authority is targeted to situations involving minor finishing or assembly, such as "screwdriver operations," that "will not deter legitimate investment"). Notwithstanding the SAA's clear articulation of Congress's intent, the Government argues that "Congress's use of the term 'screwdriver operations' does not limit the statutory definition of 'minor or insignificant.'" Def. Br. 20. This is wrong. The SAA precisely discusses how the five factors are meant to "focus the inquiry" on whether minor or insignificant assembly has occurred, processes like screwdriver assembly operations. SAA at 4216. The SAA repeats its preoccupation with "screwdriver" assembly operations no less than three times throughout its discussion of the circumvention provision, disproving the Government's contention

12

that such operations are an example, not the target of the circumvention statute.[1] As such, Congress is clear that the phrases "assembly or completion" and "minor or insignificant" serve essential, limiting functions on the five-factor inquiry.

In sum, the Government's theory of the statute is far from the best reading. It cannot ignore the overarching structure and plain language of the statute and the SAA's text to transform this inquiry into a purely discretionary test untethered by the limitations that the words "assembly or completion" and "minor or insignificant" impose. The Defendant claims, as it must, that it "would be contrary to the plain language of the provision" to interpret "minor or insignificant" beyond the meaning of the five factors. Def. Br. 20. This is because Commerce ignores the limiting functions of that statutory text and substitutes its own judgement that upstream R&D can override substantial, transformative manufacturing in the inquiry country. Def. Br. 10, 23 (describing the "special emphasis" on R&D). This interpretation is impermissible under Section 1677j.

---

[1] *See, e.g.*, SAA at 4216 ("In the case of certain products, particularly electronic products that rely on many off the shelf components, it is relatively easy for a foreign exporter to circumvent an antidumping duty order by establishing a screwdriver operation in the United States that purchases as many parts as possible from a third country.").

**B.      The Statute Does Not Allow Commerce to Assign Determinative Weight to the R&D Factor**

The Government argues that Commerce may place "preeminent importance" and "special emphasis" on R&D in this case because R&D is critical to the solar industry.  Def. Br. 23, 25.  Commerce's decision to place "preeminent importance" on the R&D factor is unlawful for two reasons.  First, the statute does not permit Commerce to make controlling any one single factor.  Second, Commerce's elevation of one factor to preeminence disregards the limitations that Congress placed on the scope of the agency's circumvention authority and distorts how the five factors may be interpreted.

**1.      Commerce Impermissibly Made One Factor Controlling**

The statute provides five factors that Commerce "shall take into account" when determining whether the production process is minor or insignificant.  19 U.S.C. § 1677j(b)(2).  When Congress enumerates a list of factors that an agency "shall" consider or evaluate, the agency cannot "ignore or bypass the core factors directed by the statute."  *Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB*, 975 F.2d 807, 813-14 (Fed. Cir. 1992).  Critically, the SAA mandates: "No single factor will be controlling."  SAA at 4216; *see* Def. Br. 1 ("Congress instructed Commerce to consider five factors and explicitly stated that the balancing would be case-specific ***and that no one factor should control***.") (emphasis added).  Nonetheless, Commerce did exactly what the SAA and the Government's own brief

14

said it could not—made one factor, the R&D factor, controlling by giving it "preeminent importance." In *Mosaic*, the Court found that the SAA indicated that Commerce had "reasonable flexibility" in interpreting the specific statutory question at issue. 160 F.4th at 1347. In the circumvention context, however, the SAA makes clear that the agency is prohibited from making any "single" subfactor controlling. SAA at 4216.

Contradictorily, the Government asserts that the sentence prior in the SAA somehow eliminates the following mandate that "no single factor will be controlling." Def. Br. 29. It does not—that sentence permits Commerce to evaluate each factor, taking into account the particular circumvention scenario. SAA at 4216. This does not undermine Congress's clear imperative that no one factor can control the outcome of the determination. SAA at 4216; *see also Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1363 (Fed. Cir. 2023) ("Commerce's finding of circumvention involved a multi-factor test and was ***supported by many findings*** other than…value added.") (emphasis added).

Commerce's own established practice confirms that the agency understood this to be the case. In the eighteen prior Commerce circumvention decisions that Canadian Solar identified, Commerce always justified affirmative circumvention determinations with a finding that the majority of the five factors weighed in favor of circumvention. Canadian Solar Principal Br. 42. The Government responds that

Canadian Solar has failed to identify an instance when Commerce formally "articulated" this practice. Def. Br. 21. However, Commerce's own practice, through eighteen separate decisions, speaks for itself. Where prior practice compels a contrary finding, the agency's about-face is arbitrary without further explanation and cannot be sustained. *See Dongbu Steel Co. v. United States*, 635 F.3d 1363, 1372-73 (Fed. Cir. 2011) ("In the absence of sufficient reasons for interpreting the same statutory provision inconsistently, Commerce's action is arbitrary."); *Huvis Corp. v. United States*, 570 F.3d 1347, 1354 (Fed. Cir. 2009) ("When it changes a past practice, an agency must also show that there are good reasons for its new policy."); *Citrosuco Paulista, S.A. v. United States*, 704 F. Supp. 1075, 1088 (Ct. Int'l Trade 1988) (emphasizing the "general rule that an agency must either conform itself to its prior decisions or explain the reasons for its departure," and adding, "{t}his rule is not designed to restrict an agency's consideration of the facts from one case to the next, but rather it is to insure consistency in an agency's administration of a statute.") (citations omitted).

Despite Congress's clear instructions, Commerce made R&D controlling in this case. Commerce found that only R&D weighed in favor of circumvention for Trina Solar Science & Technology (Thailand) Ltd. ("TTL") and, effectively, found the same for Canadian Solar by "plac{ing} dispositive weight on the R&D factor".

16

Canadian Solar Principal Br. 35.[2]  This is entirely inconsistent with the statutory scheme created by Congress.

### 2. Commerce's Inordinate Reliance on R&D Contravenes Statutory Limitations

The Government's position that it may place "preeminent importance" on R&D hinges on a novel proposition—that processing may be deemed "minor or insignificant" if the most valuable, non-location dependent inputs occurred elsewhere.  Def. Br. 13, 19.  This theory finds no support in the statutory text.

Section 1677j(b)(1)(c) is clear—it asks whether "***the process of assembly or completion***" in the inquiry country is "minor or insignificant"—not whether the inquiry country performed a valuable non-location dependent input and not whether upstream affiliates invest heavily in R&D.  Had Congress sought to write such a test, it would have done so, but it did not.  *See Hyundai Steel Co v. United States*, 19 F.4th 1346, 1352-53 (Fed. Cir. 2021) ("If Congress had intended to allow a PMS

---

[2]  There can be no dispute that Commerce considered R&D to be determinative throughout the Southeast Asia circumvention proceedings.  In the Vietnam proceeding, Commerce found four out of five factors to weigh in favor of circumvention for one respondent.  Even so, "Commerce 'g{a}ve particular importance to the level of {that respondent's} R&D in Vietnam' because of 'the uniquely complex nature of solar cell and module production.' " *Trina Solar (Vietnam) Science & Technology Co. Ltd. et al. v. US*, CIT No. 23-228, Slip Op. 26-29 (Mar. 17, 2026) at 4.  *See also* Canadian Solar Principal Br. at 43 regarding negative circumvention determinations in the Malaysia inquiry, notwithstanding the same manufacturing operations undertaken there as in Thailand.  Throughout these proceedings, the only factor that seemingly matters is R&D.

adjustment . . . it presumably would have amended the cost of production subsection . . . it did not.").

Congress treated R&D as only one factor among five, not as the paramount one that relegates the other four to no importance. The Government's position that it may place "preeminent importance" or "special emphasis" on R&D effectively rewrites the statute to ask whether the inquiry-country production was less important than upstream R&D elsewhere. Def. Br. 23, 25. That is not the test that Congress created. The Government's reading of the statute would convert Section 1677j into a sweeping tool to capture any downstream manufacturing performed outside the country explicitly covered by an AD/CVD order whenever Commerce so chooses. This would eviscerate that limiting function and allow a circumvention finding in far too many scenarios.

Here, the Government's application of its novel statutory interpretation to Canadian Solar is particularly unreasonable because it is unapologetically removed from the statute's purpose of rooting out minor ***production processes***. That is, the Government argues that "R&D is a particularly important factor in the solar industry {because}…{i}n 2021 alone,…the Canadian Solar Group invested $58 million in R&D." Def. Br. 25. The Government's insistence on a novel and unbounded interpretation of the statute thus rests ***entirely*** on the ***global*** R&D expenditures of the Canadian Solar Group in 2021—not the expenditures limited to China or

Thailand. The Government ignores Canadian Solar's **[ # ]** MW in cell manufacturing and **[ # ]** MW in module manufacturing capacity, notwithstanding the statute's focus on "production." Appx7049, Appx8456. The Government likewise says nothing of the $**[ # ]** million invested by Canadian Solar to bring its Thai manufacturing facilities online, even though this figure is **[ # ]** times the value of a number that Commerce determined to be so great that it must be controlling. Appx8506. The Government then elides over the **[ # ]** workers (more than **[ # ]** percent Thai national) employed by Canadian Solar in Thailand to *manufacture* and *assemble* cells and modules there. Appx8507, Appx8618-8617.

Commerce's reliance on exclusively this flimsy justification to place "preeminent importance" on the R&D factor renders the "minor or insignificant" factors meaningless. Treating advanced cell and model manufacturing—requiring hundreds of millions of dollars in capital, specialized equipment, and labor—as "minor or insignificant" cannot be reconciled with Congress's directive.

The Government's position carries sweeping consequences that are incompatible with the statute. Under the Government's position, any downstream manufacturing operation—no matter how capital-intensive or technologically advanced—can be deemed "minor" if upstream R&D remains concentrated elsewhere. In other words, Commerce could still find circumvention even if every

raw material was Thai and every input was manufactured in Thailand by Thai workers. That interpretation would disfavor precisely the kind of legitimate third-country manufacturing investment Congress sought to protect. SAA at 4217. Placing absolute weight on the R&D factor in this manner renders nugatory the statutory meaning of "minor or insignificant" and "assembly or completion" and is thus impermissible under Section 1677j(b)(1)(c). As such, this Court should hold that Commerce's asserted interpretation of the governing statute is unlawful.

## II. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE GOVERNMENT'S ARGUMENTS REGARDING R&D

Even if the statute allowed Commerce to render an affirmative circumvention finding based entirely on the one R&D subfactor, the Government has failed to show that Commerce supported such a decision with substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477 (1951) (citation omitted). It must be "more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." *N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

The Government claims that three facts comprise substantial evidence supporting the preeminence of R&D: (1) the global R&D expenditures of the Canadian Solar Group in 2021; (2) the R&D activities of Canadian Solar's affiliates in China; and (3) the transmissibility of R&D across borders. This is wrong. None

of these factors provides a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). Commerce made R&D the ***determinative*** consideration in this inquiry, but none of this purported support provides a coherent path to this decision.

To start, the Government emphasizes that, in 2021, the Canadian Solar Group spent $58 million in R&D globally. Def. Br. 25.[3] The Defendant provides no comparison figure here, seemingly contending that substantial evidence exists because $58 million amounts to "a lot of money." Relevant comparisons are important, though. According to the same source as the $58 million ***expense***, also in 2021, Canadian Solar Group's total operating ***expenses*** were $719 million (including R&D, selling and distribution, and general and administrative expenses). Appx6295 (the Group's Annual Form 20-F). The R&D expense cited by Commerce thus constituted only ***eight percent*** (approximately) of Canadian Solar Group's 2021 operating expenses. Moreover, in that same year, the Group's cost of revenues exceeded $4.3 billion, or approximately ***75 times*** the Group's global expenditure on

---

[3]     The Government does not explain how the global R&D expenditures of other corporate groups could be relevant to Canadian Solar, which was subject to a company-specific examination and received a company-specific determination of circumvention. Def. Br. 25 (referencing global R&D expenditures by Trina Group and LONGi). That is, Commerce was tasked with rendering a circumvention determination with respect to Canadian Solar. Evidence of, for example, the global expenditures of unaffiliated producer LONGi (which does not even manufacture in Thailand) has no legal relevance to Canadian Solar's company-specific circumvention determination.

R&D.[4] *Id.* Importantly, the cost of revenues encompasses expenses incurred on the precise types of operations identified by the other four "minor or insignificant" factors set forth in the circumvention statute—that is, the manufacture of solar products. Commerce's reliance on a $58 million expense thus soundly disproves the Government's point—R&D was a comparatively small expense for the Group in 2021, hardly the "preeminent" factor in its operations.

Commerce's reliance on this *global* figure is also untethered from the statute, and the Government's brief does not explain its relevance to a Thailand circumvention proceeding involving China AD/CVD orders. Seeking to connect these dots for Commerce, however, likewise proves fruitless in demonstrating the importance of R&D. Commerce compared R&D expenditures of Canadian Solar in Thailand against the R&D expenses of its upstream (ingot and wafer-manufacturing) affiliates and found that over three years, from 2019 to 2021, Canadian Solar's relevant Chinese ingot and wafer-producing affiliates spent $**[      #      ]** on R&D. Appx8506. The record thus indicates that, in a single year, these Chinese affiliates accounted for only approximately **[ # ]** percent of the Group's global R&D figure ($58 million). The Government has thus not shown that R&D is an

---

[4]    In the report cited by the Government, Canadian Solar explained: "In 2020 and 2021, our research and development expenses accounted for 1.3% and 1.1%, respectively, of our total net revenues." Appx6230. The report notes that "costs of revenue" include, *inter alia*, manufacturing-related costs like the costs of materials and production labor. Appx6228-6229.

outsized expense for Canadian Solar, or even that the relevant Chinese affiliates claimed an outsized share of global Group R&D expenses. In short, there is no rational path from the $58 million figure cited by Commerce to its decision that R&D is the decisive, "special" factor heavy enough to outweigh the other four.

The Government next posits that substantial evidence supports the preeminence of R&D because Canadian Solar works with its affiliates in China. Def. Br. 26 ("Commerce found that nearly all or all of the investment necessary to operate Trina's and Canadian Solar's Thai facilities were arranged by Chinese parent companies."). This is wrong. The Government is arguing that a Section 1677j(b)(3) factor may provide substantial evidence in the Section 1677j(b)(2) inquiry. But, the CIT correctly explained that Congress deliberately separated questions of affiliation from the R&D analysis in the circumvention statute. The CIT reasoned:

> The statute requires Commerce to undertake an "if/then" analysis. Only if it finds the conditions in § 1677j(b)(1)(A)–(E) satisfied does it then decide whether to expand an order to cover a third country. In doing so, it must then consider the § 1677j(b)(3) factors. ***By letting one of them—affiliation—bleed over into its weighing of the § 1677j(b)(2) elements that bear on § 1677j(b)(1)(C), the Department erred as a matter of law.*** Appx20 (emphasis added).

Moreover, even if Commerce could lawfully consider affiliation within the context of the R&D analysis, the mere presence of affiliates could not be the ***determinative***

R&D consideration, as the agency asserted here.  Such an outcome would render the separate affiliation inquiry surplusage.

The Government's focus on Chinese affiliates is also factually mistaken.  The Government describes a "pattern of R&D being performed in China while *some* production occurred in Thailand," Def. Br. 13 (emphasis added), when Commerce actually verified that CSPV cells and modules were *entirely* produced by Canadian Solar in Thailand.  Appx10367-10368.  To be clear: this case does not pertain to *any* solar cells manufactured in China.

Moreover, the Government claims support in a baseless falsehood, contending that the record shows "Chinese producers spinning off the final stage of production into Thailand" (without distinguishing between cell or module production).  Def. Br. 16.  In reality, Commerce itself acknowledged:

> While {upstream} ingot and wafer production require large amounts of upfront capital and technical capabilities, the {U.S. International Trade Commission has} found solar cell production to be the "most capital intensive part of the manufacturing process," and "a highly automated, capital intensive, and technologically sophisticated process, requiring skilled technicians and employees with advanced degrees."  Appx8476-8478, Appx10602-10611 ("cell production is where the essence of a solar module is realized.").

The Government's focus on Canadian Solar's affiliates appears to rest on the unfounded assumption that these affiliates are doing most of the production—but the record conclusively shows they are not.

24

Finally, the Government claims that R&D outweighs all other factors because the "nature of R&D is such that, once carried out, it is easily transmissible across borders." Def. Br. 27 (citing Appx10584). This statement proves nothing. The overarching question assigned to Commerce is whether "the process of assembly or completion in {Thailand} is minor or insignificant." There is no rational connection between the answer to Congress's question and the transmissibility of R&D across borders. Indeed, R&D could potentially be transmissible across borders for *any* of the industries in which Commerce has recently returned negative circumvention determinations— *Aluminum Wire and Cable From the People's Republic of China: Final Negative Scope Ruling With Respect to the Kingdom of Cambodia; Final Negative Determination of Circumvention With Respect to the Kingdom of Cambodia*, 89 Fed. Reg. 104,085 (Dep't Commerce Dec. 20, 2024); *Antidumping Duty Order on Hydrofluorocarbon Blends From the People's Republic of China: Final Negative Determination of Circumvention With Respect to R– 410B From Mexico*, 89 Fed. Reg. 88,970 (Dep't Commerce Nov. 12, 2024); and *Stainless Steel Wire Rod From the Republic of Korea: Final Negative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 34,128 (Dep't Commerce May 26, 2023). As such, the Defendant's position is effectively that since R&D can be shared across borders, circumvention always follows even if the manufacturing in the country of export is far more complex, expensive, and

25

technologically advanced than the "screwdriver operations" Congress sought to address. This outcome is plainly wrong.

The Government is thus left without substantial evidence to support its extreme position that for Canadian Solar, R&D alone outweighs the four other "minor or insignificant" factors enumerated by Congress. This deficiency is more than a juncture where "reasonable mind{s}" might differ. *Universal Camera Corp. v. N.L.R.B.*, 71 S. Ct. 456, 459 (1951) *quoting Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

## III. THE GOVERNMENT FAILS TO SHOW THAT THE VALUE OF PROCESSING PERFORMED IN THAILAND CONSTITUTES A "SMALL PROPORTION"

The record demonstrates that Canadian Solar's Thai manufacturing operations — (1) transform inert polysilicon wafers into finished CSPV cells and modules capable of producing electricity from the sun, and (2) impart nearly one-third of the value of the finished modules ([ # ] percent). Appx8476-8477, Appx10745. The Government's brief fails to demonstrate that this qualitative and quantitative transformation reasonably equates to a "small proportion" of the finished modules' value. This is so for at least three distinct reasons. First, even the Government's preferred definitions of "small" do not support a finding of circumvention. Second, the legislative history and relevant precedent confirm that Commerce should consider qualitative factors in assessing this prong of the "minor or insignificant"

inquiry. Third, Commerce precedent, including *Ferrovanadium from Russia*, demonstrates that the value of Canadian Solar's processing in Thailand cannot reasonably be considered "small." Qualitatively and quantitatively, the value imparted by Canadian Solar in Thailand constitutes much more than a "small proportion" of the value of the finished goods.

Section 1677j(b)(2)(E) requires Commerce to assess "whether the value of the processing performed in {Thailand} represents a small proportion of the value of the merchandise imported into the United States." Seeking to inform the meaning of "small," the Government volunteers the definitions "having comparatively little size" and "minor in influence, power, or rank." Def. Br. 34. Considered in the context of the SAA, these definitions do not show that the value added by Canadian Solar in Thailand (i.e., nearly one-third) is "small." The SAA explains that the circumvention statute is meant to address "screwdriver assembly operations" that add little or "insignificant" value to parts that are manufactured in a country subject to orders. SAA at 4216-17. As such, the Government's proffered definitions do not comport with Congress's directive in the SAA—specifically, it is not reasonable for Commerce to presume that a process of less than fifty percent "represents a small proportion of the value."

Next, the Government contends that Canadian Solar has requested that this Court collapse the "nature of production process" and the "value of processing"

27

prongs into a single, duplicative test. Def. Br. 33, 35-36. This is wrong. The SAA encourages Commerce to account for ***both qualitative and quantitative factors*** in undertaking this element of the "minor or insignificant" analysis. Congress explained that its goal was to remedy the previous statute's "mechanical, ***quantitative approach*** {that failed} to address adequately circumvention scenarios in which only minor assembly is done in the United States (or in a third country), but for various reasons the difference in value is not 'small.' " SAA at 4216.

The Government cannot deny that Commerce has elsewhere recognized—consistent with the SAA's instruction—that qualitative considerations are important in assessing the value added in a third country. In *U.K. Carbon & Graphite Co. v. United States*, for example, the CIT upheld a final circumvention determination where "Commerce 'performed a qualitative and quantitative value-added analysis' pursuant to 19 U.S.C. § s1677j(b) and 'found that they both supported the conclusion that the value of the processing performed in the U.K. represents a 'small proportion' of the value of the merchandise imported into the United States." 37 C.I.T. 1295, 1310 (2013). There, considering the value added in the U.K., the CIT observed that "all but five minutes of the production process that takes a substantial number of days is done in China." *Id*. at 1311. Commerce and the CIT recognized this fact to demonstrate the lack of value added in the third country, even though it had little direct bearing on the quantitative value of inputs or processing imparted there.

Similarly, in *Ferrovanadium from Russia* (a Section 1677j(a) U.S. processing circumvention inquiry discussed in the Government's brief), Commerce found the value of U.S. processing not small where:

> the value of processing performed in the United States ranged from approximately 6 percent to 26 percent on individual transactions from 2008 through 2010. When calculated on an annual, weighted-average basis, these percentages ranged from approximately 7 percent to 18 percent during the 2008-2010 inquiry period. *Preliminary Negative Determination and Extension of Time Limit for Final Determination of Circumvention of the Antidumping Duty Order on Ferrovanadium and Nitrided Vanadium From the Russian Federation*, 77 Fed. Reg. 6,537, 6,539 (Feb. 8, 2012).

Commerce explained "that the value of U.S. processing . . . fell within the range of value-added percentages that {the Department} has found to be 'small' in previous cases," which the agency distinguished because "the processing of vanadium pentoxide into ferrovanadium involves a more ***extensive and substantial conversion of merchandise***." *Ferrovanadium* Decision Memorandum, ACCESS 3089788-02 at 12, cited at Appx10618 (emphasis added). Commerce explained that these "value-added ranges . . . when viewed in combination with this ***fundamental alteration*** of the imported material, are not small." 77 Fed. Reg. 6,542 (emphasis added).

The Government accuses Canadian Solar of failing to engage with Commerce's discussion of *Ferrovanadium*. Def. Br. 40 ("Canadian Solar does not respond to any of Commerce's discussion for why *Ferrovanadium* is distinct . . . .").

Addressing this inapposite complaint is straightforward—Commerce skirted the issue in its decision memorandum, dismissing *Ferrovanadium* as an outlier case, based on the lower range of value-added percentages found there, and concluding that its views were not "necessarily inconsistent" in the instant inquiries. Appx10618. (The agency then cited the wrong case (not *Ferrovanadium*) in the footnotes to its corresponding decision memorandum. Appx10618 at n. 328 (citing *Certain Corrosion-Resistant Steel Products from China*)). What is critical here is that the Government has failed to explain why a qualitative approach could be ***determinative*** in *Ferrovanadium* but purportedly ***irrelevant*** here. Specifically, Commerce ignored years of its own precedent and findings by U.S. Customs and Border Protection confirming the creation of a cell and formation of a p/n junction to be a legally and physically transformative event. Appx10610 ("{O}nce a wafer is doped and an opposite electrical orientation is imparted on the surface, it results in the creation of a p/n junction. When sunlight strikes the cell, the positive and negative charge carriers are released, causing electrical current to flow. It is at this point that the cell is capable of generating electricity from sunlight.").

Contrary to the Government's contentions, Canadian Solar does not argue that "Congress {dictated} that Commerce ***cannot*** consider quantitative value" in assessing the value-added prong. Def. Br. 37. Rather, Canadian Solar directly and repeatedly asks this Court to look at the quantitative figure and recognize that it

30

(nearly one third) is not a "small proportion."  Principal Br. Sec. IV.A ("One Third Is Not a 'Small Proportion.' ").  This Court should require Commerce to recognize both the quantitative and qualitative aspects of the value added by Canadian Solar in Thailand.  Qualitatively, those operations turn inert polysilicon wafers into CSPV cells and then finished modules that can power homes and communities by harnessing energy from the sun.  Quantitatively, imparting one third of the final value through complex manufacturing operations is not a "small proportion."  These quantitative and qualitative characteristics of the value added in Thailand cannot weigh in favor of a finding of circumvention.

## CONCLUSION

For the foregoing reasons, the CIT's order and judgment below should be reversed and remanded. Commerce should render a Final Determination that is supported by substantial evidence and consistent with the governing statute.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Michael G. Jacobson
Nicholas R. Sparks

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004-1109
Phone: +1.202.637.5600
Fax: +1.202.637.5910
E-mail: jonathan.stoel@hoganlovells.com

*Counsel to Canadian Solar International Limited, and Canadian Solar Manufacturing (Thailand) Co., Ltd.*

Dated: April 17, 2026

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 6,938 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

    /s/ Jonathan T. Stoel
Jonathan T. Stoel

Dated: April 17, 2026